PER CURIAM.
Andre Turnbull (“Turnbull”), appeals his conviction and sentence for unlawful driving as a habitual offender. We reverse.
*276 The pertinent facts are as follows: Two police officers stopped Turnbull, an African-American man, for driving with a broken headlight. Turnbull admitted that he was driving with a suspended license, but claimed it was out of necessity to rescue his stranded girlfriend. The officers reviewed Turnbull’s driving record and arrested him. The State charged Turnbull with driving as a habitual traffic offender.
At the beginning of voir dire, the first questions the State asked the prospective jurors were: (1) Do you think the police profile people when they drive down the street? and (2) Do you think that the police racially profile people? Five prospective jurors answered affirmatively. These five prospective jurors were black.
The State exercised peremptory strikes against four of the black venirepersons, who responded to the racial profiling questions. Further, the State used a challenge for cause against the remaining black veni-reperson, who responded to the racial profiling questions.
The State used four peremptory strikes against: Locker Mich. Jeanbaptiste (“Je-anbaptiste”), Linda Fortson Latson (“Lat-son”), Charlotte Felicia Simmons (“Simmons”), and Susan Ann Smith (“Smith”). The defense timely objected to the strikes, stating that the prospective jurors were black, and requested a “race-neutral” reason for the peremptory strikes.
The State’s declared reasons for striking venireperson Jeanbaptiste were that he had experiences with racial profiling and he was arrested for driving with a suspended license. The trial judge accepted these reasons and sustained the State’s peremptory challenge of Jeanbaptiste.
Next, the State articulated that venire-person Latson should be excluded because of her experiences with racial profiling and because the prosecutor thought her experiences would affect her impartiality. The trial judge upheld this reasoning even though Latson explicitly stated that her experiences would not affect her impartiality.
Then, the State expressed that Simmons should be removed because her family had been involved in the criminal justice system. The trial judge accepted this reason as race-neutral and not pretextual.
Finally, the State reasoned that Smith should be stricken because she thought that racial profiling was prevalent in the community. The trial judge sustained the peremptory challenge. Turnbull renewed his objections to the challenged jurors before the jury was sworn.
At trial, Turnbull raised the defense of necessity, arguing that he had only driven the car as a last resort. Turnbull never argued that the officers pulled him over because of racial profiling. The jury found Turnbull guilty of unlawful driving as a habitual traffic offender, and the trial judge sentenced him to eighteen months in prison. This appeal follows.
On appeal, Turnbull asserts that the State improperly used peremptory challenges to exclude black jurors based on their beliefs that racial profiling was prevalent in the community. The State contends that excluding prospective jurors who believe that racial profiling is prevalent in the community is a race-neutral reason. Based on the specific facts in this case where racial profiling was not an issue at trial, and based on the manner the State asked the questions, we disagree with the State.
We reverse because the State’s questioning on racial profiling and use of the elicited responses to strike black jurors constituted a subterfuge to the constitutional principles of the Sixth Amendment’s *277 right to a trial by a jury of one’s peers. Our system of justice requires this result.
Although we recognize that a party has the right to use peremptory challenges to remove jurors without cause, the purpose of the challenge is derogated when a party intentionally discriminates against prospective jurors. Both the United States Supreme Court and the Florida Supreme Court have denounced the use of peremptory strikes based on race. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Neil, 457 So.2d 481 (Fla.1984).
Courts have recognized that racial discrimination in jury selection is ubiquitous and have attempted to delineate a way to reduce the discrimination by setting out specific guidelines. See Batson, 476 U.S. at 82, 106 S.Ct. 1712; Melbourne v. State, 679 So.2d 759 (Fla.1996). Without regurgitating the long line of Florida opinions that trace the proscribed discriminatory peremptory challenges, it is sufficient to say that the reasons must be race-neutral and genuine.
A facially race-neutral reason is one that is not based on race at all. See Russell v. State, 879 So.2d 1261, 1263 (Fla. 3d DCA 2004). The courts can consider relevant circumstances when determining if the explanation is race-neutral. Such circumstances can include: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment. See Melbourne, 679 So.2d at 764.
When considering whether the explanation is race-neutral, the trial judge must also look to the genuineness of the proffered reason. See Whitby v. State, 933 So.2d 557 (Fla. 3d DCA 2006). An appellate court will review the genuineness assessment for clear error. See Frazier v. State, 899 So.2d 1169 (Fla. 4th DCA 2005). Here, based upon the surrounding circumstances of this case, we conclude that the State’s reasoning for striking at least one of the prospective jurors was not genuine. Thus, the trial court committed clear error.
Here, the question of racial profiling did not bear any relevance to the case. The questions on racial profiling were not asked to illicit jurors’ general feelings toward law enforcement. Instead, the State designed tangential questions on racial profiling to elicit responses from potential black jurors, which the State later held against them when selecting the final jury panel.
The term “racial profiling,” standing alone, can be a term that engenders a visceral response. When used in a trial milieu, one should inevitably realize that the term is not race-neutral, particularly with black jurors. Here, the State reasoned that the prospective jurors’ experiences with racial profiling and their beliefs that racial profiling is prevalent would affect their impartiality. We conclude that this reasoning, standing alone, is not a genuinely race-neutral justification to purge them from the final jury panel.
We recognize that litigants may question potential jurors concerning their opinions on law enforcement or the justice system. Indeed, there are many perfectly acceptable questions that attorneys may ask to determine the prospective jurors’ feelings about police officers. In some instances, a racial profiling inquiry may be relevant in voir dire, such as when a juror brings up the subject of racial profiling, or when racial profiling is related to the defense at trial. However, these circumstances were not present in this case.
*278 The trial court’s decision to accept elicited responses to questions on racial profiling as race-neutral and genuine was clearly erroneous. The logical extrapolation of allowing this initial line of questioning is that attorneys will use irrelevant inflammatory questions to incite jurors to respond. Then, in turn, the attorneys may use the elicited responses as neutral reasons to justify the peremptory challenges. We cannot condone this trial strategy because it defeats the spirit and intent of Melbourne.
Accordingly, we find that the State’s justification of its peremptory challenges was not race-neutral and was not genuine. Therefore, since Turnbull did not receive a fair trial by a jury of his peers, we reverse and remand for a new trial.
Reversed and remanded.