# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70496-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERY DEON BROWN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 20, 2014 |
| | ) | |

Lau, J. — Jeffery Deon Brown appeals his convictions for one count of

possession with intent to distribute heroin within 1,000 feet of a school bus stop and

possession with intent to distribute cocaine within 1,000 feet of a school bus stop. He

contends the trial court erred by denying his CrR 3.6 motion to suppress evidence

based on a pretextual search. He also contends the trial court violated his equal

protection right when it allowed the prosecutor to use a peremptory challenge on the

only remaining African American member of the jury panel. Finding no error, we affirm.

## FACTS

The trial court's unchallenged suppression hearing findings of fact,[1] which are

verities on appeal, establish the following: Tanya Simpson agreed to "work off" her

_____

[1] The trial court entered detailed, mostly unchallenged findings of fact. Brown
challenges only findings of fact 3 (a) through (d), but those findings are supported by

delivery of cocaine arrest by working as a confidential informant for the Auburn Police Department on drug cases. Detective Lance Pearson agreed to count Simpson's assistance as partial satisfaction of her confidential informant contract. To satisfy this obligation, Simpson told Detective Pearson that Jeffery Deon Brown had an outstanding arrest warrant and had sold drugs in the past. She also mentioned Brown's involvement in a recent witness intimidation incident.

Detective Pearson recognized Brown's name as a suspect who had recently run from the police. After confirming a valid Auburn Municipal Court arrest warrant, Detective Pearson enlisted Simpson's help to arrest Brown on the warrant. Simpson agreed to lure Brown out of his motel room so officers could arrest him. Detective Pearson planned to arrest Brown in the parking lot. Simpson called Brown at the motel to confirm his presence. She said she would bring him food.

Detective Pearson drove to the motel. There, he saw Brown talking to a woman later identified as Brown's sister. Detective Pearson did not expect to see Brown outside of the motel at this point. Detective Pearson quickly called for officer backup, but officers could not respond fast enough to aid Detective Pearson with Brown's arrest. Simpson drove up and talked to Brown in the parking lot per Detective Pearson's instructions. But within minutes, Brown entered room 28. Five officers, including a K-9 unit, arrived at the motel too late to arrest Brown before he walked back into his room. Detective Pearson and several officers walked to the motel room while another officer checked the exit route.

---

substantial evidence as discussed below. The court's written findings also incorporate its oral findings and conclusions.

-2-

Officers knocked on the door. Brown answered, "Who is it?" Officers announced their presence and ordered Brown to open the door. Brown did not respond. They knocked and announced their presence several more times, with no response from Brown. Detective Pearson got a room key from the manager after confirming "Jeffrey Brown" rented the room. Officers again knocked, announced their presence, and warned they would unlock the door. When Brown failed to respond, officers unlocked and opened the door. They saw Brown lying on a bed and two women standing. Officers ordered all three to come out of the room. They complied.

Detective Pearson talked to the two women and Officer Douglas Faini arrested Brown. No officers walked into the room before they obtained a search warrant. One of the women told Detective Pearson that Brown was selling drugs out of the motel room. She said when officers knocked, Brown asked her to hold onto the bag of drugs. She hid it under the sink.

In a search of Brown incident to arrest, Officer Faini found two wallets. One wallet contained identification and cards. The other contained a "large amount of cash stacked into fourteen bundles each total[ing] approximately $100." Based on the discovery of the uniquely stacked money and the woman's statements, Detective Pearson obtained a search warrant, searched the motel room, and found several bags of heroin, crack cocaine, methamphetamine, a digital scale covered with heroin, and Brown's cell phone.

The State charged Brown with one count of possession with intent to distribute heroin within 1,000 feet of a school bus stop and possession with intent to distribute cocaine within 1,000 feet of a school bus stop. After Brown's pretrial suppression

hearing, the court concluded, "The defendant's arrest pursuant to the valid warrant was not a pretext to search the defendant's motel room."

During jury selection, the jury panel included two African American members. The trial court excused one who expressed a hardship that the court could not accommodate, and the prosecutor used a peremptory challenge to strike the other African American, juror 5. The trial court sustained the challenge on the ground the prosecutor provided a race-neutral explanation. Juror 5 "said she would have difficulty trusting police officers and law enforcement in general, [and] that she would look negatively on them." Report of Proceedings (RP) (Mar. 21, 2013) at 33–36. The prosecutor questioned juror 5 about possible bias against police officers:

> [STATE]: [W]ould your own personal biases against police officers cloud what you hear from the officers in front of you?
> Juror 5: I think so because I honestly don't trust them.
> [STATE]: And so you think it would interfere with your ability to be open to their testimony?
> Juror 5: Yes.

RP (Mar. 20, 2013) at 202–03. When defense counsel asked juror 5 if she could "give the government a fair trial," the juror responded:

> I still look at this case for what it is. I can still follow the Washington state laws and take the evidence and put that against the laws and determine whether he's guilty or innocent. My personal opinion is I don't like the cops, I don't trust the cops, and I'm going to listen to what they say, I'm going to take it for what I think it's worth. I can't – I can't change my personal opinion about them, which is what we're asking here.

RP (Mar. 20, 2013) at 204. The trial court ruled that juror 5's bias towards police officers was a sufficient race-neutral reason to support the State's peremptory challenge.

The jury convicted Brown as charged. He appeals on two main grounds. He contends police relied on a misdemeanor warrant as a pretext to obtain a search warrant and the State exercised a race-based peremptory challenge.

## ANALYSIS

### Standard of Review

We review a trial court's findings of fact entered pursuant to a CrR 3.6 motion to suppress for substantial evidence and for whether the findings of fact support the conclusions of law. State v. Cole, 122 Wn. App. 319, 322–23, 93 P.3d 209 (2004). "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)). We review a trial court's legal conclusions pertaining to suppression of evidence de novo. State v. Arreola, 176 Wn.2d 284, 291, 290 P.3d 983 (2012). Unchallenged findings of fact are verities on appeal. State v. Brockob, 159 Wn.2d 311, 343, 150 P.3d 59 (2006). Credibility determinations are for the trier of fact and are not subject to appellate review. State v. Camarillo, 151 Wn.2d 60, 71, 794 P.2d 850 (1990).

"'In reviewing a trial court's ruling on a Batson challenge, the determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly erroneous.'" State v. Rhone, 168 Wn.2d 645, 651, 229 P.3d 752 (2010) (internal quotation marks omitted) (quoting State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008)).

Pretext

Brown contends, "The State improperly used the misdemeanor arrest warrant as a pretext to perform a speculative investigation as to whether Mr. Brown was currently selling drugs." Br. of Appellant at 9 (emphasis omitted). As an initial matter, Brown challenges the trial court's written findings of fact 3(a) through 3(d) that support the court's legal conclusion that the arrest warrant was not used as a pretext to conduct a narcotics investigation. Br. of Appellant at 1–2. The record indicates substantial evidence to support these findings.

Finding of fact 3(a) states that Detective Pearson "believed that Brown was a threat to the community because of his active arrest warrant, a recent incident in which he fled from Auburn PD, and his possible involvement in a recent incident of witness intimidation." Detective Pearson's testimony supports this finding. He described an incident in December 2012 in which Brown ran from police to avoid arrest on a warrant. They later tried to find him at his residence, but he was not there. Police officers arrested him after his neighbor called police. Officers later learned that Brown might have sent someone to assault the neighbor in retaliation for the call to police.

Finding of fact 3(b) states that Detective Pearson "had no reason to believe that the Brown [sic] was actively dealing drugs; in fact, he had reason to believe the contrary." The court's unchallenged oral finding states that Detective Pearson "had no current information about Mr. Brown possessing drugs or selling drugs . . . ." RP (Mar. 20, 2013) at 60.[2]

---

[2] Because the trial court formally incorporated its oral ruling into the findings of fact and conclusions of law, it is binding. See State v. Michielli, 132 Wn.2d 229, 242,

The court also found, "There was . . . a valid arrest warrant, so there was nothing improper about Detective Pearson based on information that he had [from the confidential informant] that Mr. Brown was present at the motel [and] to go and try and make that arrest." RP (Mar. 20, 2013) at 59. "I think it was highly credible that [Detective Pearson] had planned, as he said, to arrest him in the parking lot. . . .They didn't go into the room. They didn't do a plain view kind of a search." RP (Mar. 20, 2013) at 63.

Brown contends that Simpson told Detective Pearson that Brown had sold drugs in the past, and Detective Pearson testified that it was "definitely a possibility" that Brown was still selling drugs. RP (Mar. 19, 2013) at 61. Regardless, Detective Pearson was clear that he had no information indicating that Brown was currently selling drugs at the time of Brown's arrest. Brown testified that when Simpson asked him if he had any drugs prior to his arrest, he told her, "No." RP (Mar. 20, 2013) at 18. Substantial evidence supports the trial court's finding of fact 3(b).

Finding of fact 3(c) shows that Detective Pearson planned to arrest Brown in the parking lot of the motel rather than in his room because of potential safety issues. He was also concerned about protecting Simpson from possible retaliation. His plan involved using Simpson to lure Brown out of his motel room to confirm Brown's identity and avoid a dangerous situation where Brown might "barricade [himself] and it becomes a SWAT thing." RP (Mar. 19, 2013) at 66. After Simpson left, Detective Pearson planned to arrest Brown on his way back to his room, assisted by backup officers and a

937 P.2d 587 (1997) (quoting State v. Dailey, 93 Wn.2d 454, 610 P.2d 357, 458-59 (1980) ("'[A] trial court's oral decision has no binding or final effect unless it is formally incorporated into the findings of fact, conclusions of law, and judgment.'").

-7-

police dog in case Brown attempted to flee. Brown argues that the plan "defied logic" and that it "is far more likely that Detective Pearson anticipated exactly what occurred"—that Brown would return to his room and then the police could use the arrest warrant as a pretext for the search. Br. of Appellant at 13. Even if Brown is right, the trial court is in a better position than this court to evaluate the credibility of the witnesses. State v. Hill, 123 Wn.2d 641, 646, 870 P.2d 313 (1994). Detective Pearson's testimony about the arrest plan was not contradicted. Substantial evidence and the court's unchallenged oral findings summarized above support finding of fact 3(c).

Finally, Brown challenges the trial court's finding of fact 3(d). The trial court found that the K-9 unit was present in case Brown fled. Brown argues that "it was unlikely the K-9 unit would be needed" because once the police were outside the door of his motel room, he had nowhere else to go. Br. of Appellant at 13. This argument ignores the trial court's unchallenged oral finding that Detective Pearson's original plan was to arrest Brown out in the open parking lot, not in his motel room. We defer to the court's credibility determination

Brown's challenge to findings 3(a) through (d) amounts to arguments over the weight and persuasiveness of the evidence. We defer to the fact finder on issues of "conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874–75, 83 P.3d 970 (2004). Brown argues that the trial court erred when it concluded as a matter of law that the police did not use Brown's arrest warrant as a pretext to conduct a speculative drug search. However, the totality of the circumstances shows that the police did not use Brown's arrest warrant as a

pretext to conduct a speculative narcotics investigation. And the findings of fact support this conclusion of law.

Brown relies on State v. Hatchie, 161 Wn.2d 390, 392–93, 166 P.3d 698 (2007). In Hatchie, the court explained that an arrest warrant provides police with limited authority to enter a residence:

> [A]n arrest warrant—even for a misdemeanor—constitutes "authority of law" which allows the police the limited power to enter a residence for an arrest, as long as (1) the entry is reasonable, (2) the entry is not a pretext for conducting other unauthorized searches or investigations, (3) the police have probable cause to believe the person named in the arrest warrant is an actual resident of the home, and (4) said named person is actually present at the time of entry."

Though the court found no pretext in that case, it expressed concern that police could abuse the authority granted by arrest warrants:

> Therefore, we take pains to point out an arrest warrant does not allow for a general search of the premises. Rather it allows only the limited ability to enter the residence, find the suspect, arrest him, and leave. . . . [P]olice cannot use an arrest warrant . . . as a pretext for conducting a search or other investigation of someone's home."

Hatchie, 161 Wn.2d at 400–01.

Brown also relies on State v. Ladson, 138 Wn.2d 343, 979 P.2d 833 (1999). There, the court held that pretextual traffic stops violate article I, section 7 of the state constitution. The court stated that when determining whether a search is pretextual, "the court should consider the totality of the circumstances, including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson, 138 Wn.2d at 359. As discussed above, the record is clear that the court's

"totality of the circumstances" determination encompassed Detective Pearson's subjective intent and objective reasonableness of his actions.[3]

Brown's pretext claim rests partly on factual misstatements in his briefing and ignores the trial court's unchallenged findings of fact and the evidence. Brown's opening brief argues, without citation to the record, "[Detective Pearson's] actions, which included arranging for several officers to assist him with the arrest and interviewing the women in the motel with Mr. Brown, demonstrated that [Detective Pearson] arranged the arrest in order to perform a speculative narcotics investigation." Br. of Appellant at 13–14 (emphasis added). Citing page 4 of the search warrant affidavit, Brown's argues, "In this case, the officers unlawfully deviated from the authority they were granted by the arrest warrant when they entered the motel room and conducted a narcotics investigation by questioning the women who were with Mr. Brown. Pretrial Ex. 4 at 4." Reply Br. of Appellant at 4 (emphasis added). Nothing in the four-page affidavit supports Brown's arguments quoted above. The trial court's unchallenged findings of fact, supported by substantial evidence, state that Detective Pearson spoke to the two women outside of the motel room after officers ordered Brown and the women to come outside. The court also found that officers never walked into the room during Brown's arrest.

Brown also points to a perceived conflict between Detective Pearson's affidavit testimony (see Reply Br. of Appellant at 7) and the State's argument (see Br. of Resp't at 6). We are not persuaded by this claim. As previously noted, we defer to the fact

_____

[3] The State argues, "A defendant cannot raise a pretext argument where officers had preexisting lawful authority to enter a residence." Br. of Resp't at 12. Given our dispositive resolution of the pretext issue, we decline to address this argument.

finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. We find no error in the trial court's ruling denying Brown's suppression motion grounded in a pretext claim.[4]

### The Batson Challenge

Brown argues that the trial court violated his Fourteenth Amendment right to equal protection of the laws when it sustained the State's peremptory challenge on the remaining African American, juror 5.

The equal protection clause of the Fourteenth Amendment prevents a party from challenging a potential juror solely based on race. Batson v. Kentucky, 476 U.S. 79, 85–86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Batson established a three-part test to determine "whether a venire member was peremptorily challenged pursuant to discriminatory criteria." State v. Rhone, 168 Wn.2d 645, 651, 229 P.3d 752 (2010). First, the party alleging such discrimination must establish a prima facie case of purposeful discrimination. Rhone, 168 Wn.2d at 651. Second, the burden shifts to the other party who must provide a race-neutral explanation for challenging the potential juror. Rhone, 168 Wn.2d at 651. Finally, the trial court determines whether the challenging party has established purposeful discrimination. Rhone, 168 Wn.2d at 651. The defendant carries the burden of proving the existence of purposeful discrimination. Batson, 476 U.S. at 93. "'In reviewing a trial court's ruling on a Batson challenge, [t]he

---

[4] The Supreme Court recently found that a mixed motive search in the context of a traffic stop does not amount to pretext. Arreola, 176 Wn.2d at 288 ("A mixed-motive traffic stop is not pretextual so long as the desire to address a suspected traffic infraction (or criminal activity) for which the officer has a reasonable articulable suspicion is an actual, conscious, and independent cause of the stop.").

determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly erroneous.'" Rhone, 168 Wn.2d at 651 (alteration in original) (quoting State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008)). Both parties agree that the issue here involves only the third Batson factor.

Here, the jury panel included two African American members. The court excused without objection one of the two. The State used a peremptory challenge on the remaining African American member. The State explained its peremptory challenge was based on the prospective juror's repeated comments about her lack of trust in police officers during juror questioning.

> [STATE]: [W]ould your own personal biases against police officers cloud what you hear from the officers in front of you?
> [Juror 5]: I think so because I honestly don't trust them.
> [STATE]: And so you think it would interfere with your ability to be open to their testimony?
> [Juror 5]: Yes.

RP (Mar. 20, 2013) at 202–03. When defense counsel asked her if she could nevertheless "give the government a fair trial," juror 5 responded:

> I still look at this case for what it is. I can still follow the Washington state laws and take the evidence and put that against the laws and determine whether he's guilty or innocent. My personal opinion is I don't like the cops, I don't trust the cops, and I'm going to listen to what they say, I'm going to take it for what I think it's worth. I can't—I can't change my personal opinion about them, which is what we're asking here.

RP (Mar. 20, 2013) at 204. The trial court sustained the State's peremptory challenge. It found the State's rationale constitutes a sufficient race-neutral, nondiscriminatory reason to strike juror 5.

Brown argues that striking a juror because of that juror's mistrust of police "is not a reason devoid of race." Reply Br. of Appellant at 10. Brown suggests that "it is not

uncommon for African Americans to have negative experiences with police officers;" thus, the "State may not exclude an African American juror based on the fact that she does not think highly of the police." Br. of Appellant at 19.

We previously rejected a similar argument in State v. Wright, 78 Wn. App. 93, 896 P.2d 713 (1995), and State v. Rhodes, 82 Wn. App. 192, 917 P.2d 149 (1996). In Wright, we concluded the defendant failed to establish a prima facie case of purposeful discrimination when the prosecutor used a peremptory challenge on the only African American juror. Wright, 78 Wn. App at 101–02. Like the present case, the Wright juror expressed a mistrust of police officers. Wright, 78 Wn. App. at 102. The defendant argued that "because [the juror's] opinion of the police was the result of being an African-American male, excusing him on the basis of his views was necessarily a discriminatory act." Wright, 78 Wn. App at 102. We disagreed. "[The juror's] comments about the police would give any deputy prosecutor a legitimate reason to excuse a juror because of potential bias against a State witness." Wright, 78 Wn. App at 103.

In Rhodes, the prosecutor used a peremptory challenge on the only African American juror because the juror revealed an unpleasant experience with a police officer. Rhodes, 82 Wn. App. at 200–01. The trial court sustained the challenge; we affirmed. "The State may properly inquire about any potential bias against its main witnesses who were police officers." Rhodes, 82 Wn. App. at 202.

Brown relies on United States v. Bishop, 959 F.2d 820 (9th Cir. 1992) (overruled on other grounds in United States v. Nevils, 598 F.3d 1158 (9th Cir. 2010)). Bishop is distinguishable. There, the government improperly relied on assumptions about where

-13-

the challenged juror lived rather than the juror's responses to questions about possible bias against police officer witnesses. The prosecutor challenged the juror "because she lived in Compton, a poor and violent community whose residents are . . . 'more likely to think that the police probably used excessive force.'" Bishop, 959 F.2d at 825. The court reasoned, "Government acts based on such prejudice and stereotypical thinking are precisely the type of acts prohibited by the equal protection clause of the Constitution." Bishop, 959 F.2d at 826 (citing Batson, 476 U.S. at 97).

Brown also relies on Turnbull v. State, 959 So. 2d 275 (Fla. Dist. Ct. App. 2006). That case is also distinguishable. There, the prosecutor asked the jury panel if they thought police "racially profile people," and five African American panel members raised their hands. Turnbull, 959 So. 2d at 276. The prosecutor used peremptory challenges to eliminate four of the jurors and then eliminated the fifth for cause. Turnbull, 959 So. 2d at 276. The trial court sustained the challenges based on the jurors' responses to the racial profiling question. The appellate court reversed because "[t]he questions on racial profiling were not asked to illicit jurors' general feelings toward law enforcement." Turnbull, 959 So. 2d at 277. The case did not involve racial profiling. The court found that the prosecutor's questions were a pretext to eliminate the African American jurors. Turnbull, 959 So. 2d 277. Still, the court recognized "that litigants may question potential jurors concerning their opinions on law enforcement . . . ." Turnbull, So. 2d at 277. Wright and Rhodes control here. Bishop and Turnbull do not.

Brown's Batson challenge fails. The State properly exercised its disputed peremptory challenge here because the record established juror 5's potential bias against police officer witnesses.

-14-

Additional Grounds for Review

Brown argues two additional grounds warrant review. See Statement for Additional Grounds for Review. These grounds are meritless.

First, Brown argues that his privacy rights under article I, section 7 of the state constitution were violated when the police responded to text messages on his phone and answered several phone calls. He claims that the phone was never introduced into evidence, yet officers nevertheless testified to information they received from his phone. These claims fail. The cell phone was seized as evidence based on a valid, unchallenged search warrant. See State v. Hinton, 179 Wn.2d 862, 319 P.3d 9 (2014) (invalidating warrantless cell phone search). Further, officers never testified to the contents of the text messages, only that messages existed. Defense counsel never objected to the challenged evidence. The court's unchallenged finding states, "Officers answered the phones and set up several 'buy busts' with individuals trying to buy drugs from 'Deon,' the defendant's middle name." This claim fails.

Second, Brown argues that lab reports and testimony indicating that methamphetamine was discovered in his motel room prejudiced the jury because he was not on trial for possessing methamphetamine. Defense counsel failed to object to the admission of the methamphetamine evidence. Brown fails to show manifest constitutional error. When the defendant fails to object to an alleged error at trial, he "has the initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'" State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)).

-15-

"Generally evidentiary errors are not of a constitutional magnitude." State v. Grier, 168 Wn. App. 635, 643 n.16, 278 P.3d 225 (2012) (citing State v. Chase, 59 Wn. App. 501, 508, 799 P.2d 272 (1990) (where error, if any, would have been a violation of ER 403 or 404(b), such alleged error is not of constitutional magnitude)). The alleged error is waived. We decline to review it. Further, Brown establishes no prejudice from the methamphetamine evidence's admission at trial.

## CONCLUSION

For the reasons discussed above, we affirm the convictions.

WE CONCUR: