Filed 9/20/21  P. v. Farrell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  WAYNE ANTHONY FARRELL,  Defendant and Appellant. | D076857  (Super. Ct. No. SCD281536) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Reversed with directions.

Alex Kreit, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Wayne Anthony Farrell of two misdemeanor counts of resisting a peace officer.  (Pen. Code, § 148, subd. (a).)  The trial court suspended imposition of sentence for three years and granted summary

probation, on the condition (among others) that Farrell serve 157 days in local custody. This condition was satisfied by time already served.

Farrell appeals. He contends the trial court erred by denying his *Batson*/*Wheeler* motion during jury selection, after the prosecutor struck two Black prospective jurors. (See *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).) *Batson*, *Wheeler*, and their progeny prohibit racial discrimination in jury selection and establish a framework for analyzing a defendant's claim that such discrimination has occurred.

We conclude the trial court erred by misapplying the third step of the *Batson*/*Wheeler* analysis for one prospective juror. We therefore reverse the judgment and direct the trial court to perform a proper third-step analysis in accordance with this opinion. If the court again denies Farrell's *Batson*/*Wheeler* motion, it shall reinstate the judgment. If it grants the motion, or finds it cannot rule on the motion due to the passage of time or other similar reasons, it shall set the case for a new trial, if the prosecution so elects.

## FACTUAL AND PROCEDURAL BACKGROUND

The charged offenses arose from an altercation that ensued after two sheriff's deputies tried to evict Farrell from his apartment. The specific facts of the offenses are not relevant to the disputed issues in this appeal.

In advance of trial, the court summoned a number of prospective jurors. Two prospective jurors, PJN8 and PJN6, were the subject of Farrell's *Batson*/*Wheeler* motion. Both appeared to be Black, as is Farrell.

During jury selection, Farrell's counsel asked whether any jurors had either positive or negative experiences with the police. PJN8 raised her hand. She said she had encountered racial profiling in both childhood and

adulthood. She explained, "When I was a child, I've been followed around stores, driving, while [B]lack. I mean, your common cases of racial profiling." PJN8 believed she had been stopped wrongly by police while in high school: "I was driving my dad's car. He had failed to get the registration renewed, but they—that wasn't why he had stopped me originally." She went to court and had to pay a ticket. Farrell's counsel asked, "And has that experience left you with kind of a lasting impression about law enforcement in general, or is it more limited just to that officer?" PJN8 responded, "Somewhat that officer, but kind of in general. It's kind of like an uneasy kind of feeling." But she believed she could look at the facts of the case independently and be fair and impartial. Farrell's counsel asked whether any other jurors had similar experiences, but it appears no other jurors, including PJN6, responded.

Farrell's counsel then engaged in a colloquy with another prospective juror, who had reservations about police truthfulness. When asked what sort of things would help the juror decide whether or not an officer was truthful, the juror said, "The initial confrontation, what precipitated—I mean, given the racial differences, we have different relationships with the police. And that's reflected in incarceration here in America. So it's different." Farrell's counsel asked if any other jurors felt similar, and both PJN8 and PJN6 raised their hands.

Farrell's counsel brought up the idea of excessive force and discussed it with several jurors. When she was finished, the prosecutor continued that theme. He asked PJN6 what she thought about police use of force, specifically, "Do you think a police officer needs to allow force to be used against them first?" PJN6 responded, "Yeah, I think that instead of putting force on someone else, they should work to detain them before. Because I feel

like, as mentioned before, there shouldn't be any, like, broken bones or anything if you're just trying to stop someone from doing something." But she thought force would be acceptable "[i]f you think that . . . you would be hurt enough that you can't detain them." Later, the prosecutor presented a hypothetical situation to PJN6 involving a police officer who was concerned about a person running in and out of traffic. After some back and forth, PJN6 ultimately said that the officer should "[t]ry to stop him but not use excessive force. Like if he tries to pull away, pulls the officer into traffic, then [the officer] should probably just let him go." But if the person uses force, the officer should not just walk away. PJN6 agreed with the prosecutor that the police officer should use a "reasonable amount of force" and "if he's going to run into traffic and it's against the law and the officer just grabs him and pulls him out of the way, that's okay; but he probably shouldn't pull out his gun and shoot him in the leg to keep him from running into traffic[.]" PJN6 also agreed that force was acceptable as long as it was reasonable.

After the questioning was complete, the prosecutor used his first peremptory challenge to strike PJN8. After two other challenges, the prosecutor used his fourth peremptory challenge to strike PJN6. Farrell objected, citing *Batson* and *Wheeler*.

Outside the presence of the prospective jurors, Farrell's counsel explained that both PJN8 and PJN6 were Black, as was Farrell. The trial court found that Farrell had made a prima facie showing of discrimination and asked the prosecutor to state his reasons for challenging PJN8 and PJN6. He responded, "Yes, Your Honor. So [PJN8] was excused because she felt she had been racially profiled before, and I felt like she was anti-law enforcement. Similarly, [PJN6] made several comments when I was asking her about the—whether or not police officers should be able to use force, that

4

she did not like when they used force.  Those were the reasons that I asked to have them excused."

The court was satisfied with the prosecutor's explanation.  It stated, "So I agree with the People with regard to the responses that the individuals who he has so far excluded including [PJN6] were such that they provided a neutral explanation for the challenge. . . .  [¶]  And I do have notes that [PJN6] made comments about the concern about being racially profiled and she had some exchanges about racial profiling, and as did [PJN8].  I do believe that the People have provided nondiscriminatory reasons for the challenges.  [¶]  They expressed some bias, it seemed, towards police based on their own experiences.  They would be asked to judge the credibility of the officers in this case, and I believe that justification is warranted at this point, so the motion is denied."

After further challenges, a jury was seated and sworn.  The prosecutor presented his case-in-chief.  Farrell did not call any witnesses.  The jury convicted Farrell of two counts of resisting a peace officer, as discussed above. He appeals.

## DISCUSSION

### I

### Batson/Wheeler *Principles*

" '[A] party may exercise a peremptory challenge for any permissible reason or no reason at all' [citation] but 'exercising peremptory challenges solely on the basis of race offends the Fourteenth Amendment's guaranty of the equal protection of the laws' [citations].  Such conduct also 'violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution.' " (*People v. Smith* (2018) 4 Cal.5th 1134, 1146 (*Smith*).)

5

"A three-step inquiry governs the analysis of *Batson/Wheeler* claims. 'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citation.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. [Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." ' " (*People v. Miles* (2020) 9 Cal.5th 513, 538 (*Miles*).)

"A prosecutor asked to explain his conduct must provide a ' "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.' [Citation.] 'The justification need not support a challenge for *cause*, and even a "trivial" reason, if genuine and neutral, will suffice.' [Citation.] A prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons. [Citations.] Nevertheless, although a prosecutor may rely on any number of bases to select jurors, a legitimate reason is one that does not deny equal protection. [Citation.] Certainly a challenge based on racial prejudice would not be supported by a legitimate reason." (*People v. Lenix* (2008) 44 Cal.4th 602, 613 (*Lenix*).)

"At the third stage of the *Wheeler/Batson* inquiry, 'the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' [Citation.] In assessing credibility, the court

6

draws upon its contemporaneous observations of the voir dire. It may also rely on the court's own experiences as a lawyer and bench officer in the community, and even the common practices of the advocate and the office that employs him or her." (*Lenix*, *supra*, 44 Cal.4th at p. 613.)

" ' "The proper focus of a *Batson*/*Wheeler* inquiry, of course, is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective reasonableness of those reasons. . . . All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory." ' " (*Miles, supra*, 9 Cal.5th at p. 539.)

"Review of a trial court's denial of a *Wheeler*/*Batson* motion is deferential, examining only whether substantial evidence supports its conclusions. [Citation.] 'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges " 'with great restraint.' " [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.' " (*Lenix, supra*, 44 Cal.4th at pp. 613-614.)

## II

### *Prospective Juror No. 8*

Farrell first contends the trial court erred in the second step of its *Batson*/*Wheeler* analysis by finding that the prosecutor's reason for challenging PJN8 was race-neutral. The prosecutor told the court that he

7

challenged PJN8 "because she felt she had been racially profiled before, and I felt like she was anti-law enforcement."

A race-neutral explanation "means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." (*Hernandez v. New York* (1991) 500 U.S. 352, 360.)

A prospective juror's negative view of law enforcement is a race-neutral reason for exercising a peremptory challenge under existing case law. (*People v. Jones* (2013) 57 Cal.4th 899, 919; accord, *People v. Panah* (2005) 35 Cal.4th 395, 442.) Our Supreme Court has held that this reason remains race-neutral even when based on racial profiling. (See *People v. Blacksher* (2011) 52 Cal.4th 769, 802 [holding that a prospective juror's skepticism towards police testimony "based upon a racial-profiling incident involving her brother" was a valid reason for challenging her]; see also *People v. Winbush* (2017) 2 Cal.5th 402, 439 ["Skepticism about the fairness of the criminal justice system to indigents and racial minorities has . . . been recognized as a valid race-neutral ground for excusing a juror."].)

Farrell argues that "[c]ourts in other jurisdictions have recognized that a venireperson's experience as the victim of racial discrimination is not a race neutral justification for dismissal." To the extent these courts diverge from

our own Supreme Court, we are bound to follow our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)[1]

Moreover, Farrell's argument is somewhat beside the point. He focuses on the prospective juror's experience as a victim of racial discrimination and contends that such experience, "standing alone," is not a race-neutral reason for excluding her. But the prosecutor did not exclude PJN8 solely based on her experience of racial profiling. He cited her "anti-law enforcement" views. During jury selection, she explained that her personal experience affected her view of the police in general, not merely the individual officer who she felt mistreated her. Because the prosecutor's challenge was based on the prospective juror's negative view of law enforcement, not her status as a member of a racial minority, it was race-neutral under existing case law.

---

[1] We note that at least two Supreme Court justices have expressed the view that existing case law surrounding this issue should be reconsidered. (See *People v. Triplett* (2020) 48 Cal.App.5th 655, 691-692 (Liu, J., joined by Cuéllar, J., dissenting from denial of review).) But, as an intermediate appellate court, we cannot undertake such reconsideration ourselves. We also note that the Legislature recently enacted new limits on peremptory challenges in criminal cases. (Code Civ. Proc., § 231.7, added by Stats. 2020, ch. 318, § 2.) Among other things, the statute identifies a number of reasons for exercising a peremptory challenge that are "presumed to be invalid unless the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race [or other protected class], and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case[.]" (*Id.*, subd. (e).) These presumably invalid reasons include "[e]xpressing a distrust of or having a negative experience with law enforcement or the criminal legal system" and "[e]xpressing a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner." (*Id.*, subd. (e)(1)-(2).) The statute, however, applies only to trials in which jury selection begins on or after January 1, 2022. (*Id.*, subd. (i).) Farrell does not argue that the statute should apply here.

The out-of-state cases Farrell cites primarily consider prospective jurors' abstract views on race and racism, rather than specific attitudes toward law enforcement officers. They are therefore unpersuasive. (See *Love v. Yates* (N.D.Cal. 2008) 586 F.Supp.2d 1155, 1180 [a prosecutor's peremptory challenge was discriminatory because it was based on a prospective juror's "awareness and experience of racism in general," unrelated to the criminal justice system; it was "tantamount to saying that she could not be impartial because of her race"]; *State v. McRae* (Minn. 1992) 494 N.W.2d 252, 257 [same, where based on a prospective juror's view that "there are 'flaws' in the system," but it is " 'generally fair,' " and where the prosecutor expressed the belief that the prospective juror " 'would over compensate by basically letting [the defendant] off' " because she was Black and the defendant was also Black]; *People v. Mallory* (N.Y.App.Div. 2014) 121 A.D.3d 1566, 1567, 1568 [same, where based a prospective juror's belief that police officers sometimes " 'unfairly target members of the minority community,' " in the absence of any connection to the juror's ability to assess the testimony of police witnesses]; see also *Turnbull v. State* (Fla.App. 2006) 959 So.2d 275, 276-277 [a prosecutor's peremptory challenges were discriminatory because the prosecutor raised the issue of racial profiling not to elicit "jurors' general feelings toward law enforcement" but as a "subterfuge" to engage in racial discrimination; in other contexts, "a racial profiling inquiry may be relevant in voir dire, such as when a juror brings up the subject of racial profiling"].)

Our Supreme Court's discussion in *People v. Avila* (2006) 38 Cal.4th 491 is instructive. In that case, our Supreme Court held that a prosecutor could properly exclude a prospective juror based on her view "that the police lie." (*Id.* at p. 544.) The Supreme Court rejected the defendant's claim that the challenge was not race-neutral because "members of racial minority

10

groups are generally arrested more often and on less evidence than White individuals and thus tend to distrust police officers more than others." (*Id.* at p. 545.) The challenge was based on the prospective juror's own view, rather than "a theoretical perception that she, a member of a minority group, might view the police with distrust." (*Ibid.*)

Similarly, in *People v. Calvin* (2008) 159 Cal.App.4th 1377, 1383, the appellate court rejected the defendant's claim that "the prosecutor's reliance on the skeptical attitudes of the African-American jurors toward the criminal justice system in exercising his peremptory challenges was not race neutral because such attitudes are so widespread among African-Americans as to constitute a surrogate for race." The court assumed that "such attitudes predominate among African-Americans" but noted "they are neither inevitable among African-Americans nor restricted to them. Every racial and ethnic group can contain persons who have had unpleasant experiences with law enforcement that have caused them to form an unfavorable view of the criminal justice system, or who have formed such views for other reasons. . . . Because such skepticism, regardless of its prevalence among African-Americans, is not exclusively associated with their race and constitutes a plausible basis for challenge, there is nothing 'inherent' in the criterion that suggests *intentional* racial discrimination." (*Id.* at p. 1386.)

Farrell emphasizes that racial profiling and racial discrimination are inherently linked to race. But, as noted, the prosecutor's challenge in this case was based on PJN8's "anti-law enforcement" views, not merely the experience of being racially profiled. We express no opinion whether the experience of being racially profiled, standing alone, would constitute a race-neutral reason for exercising a peremptory challenge.

11

In a related argument, Farrell contends the trial court erred in the third step of its *Batson*/*Wheeler* analysis by finding that the prosecutor's explanation was not pretextual. As noted, we review the trial court's finding for substantial evidence. (*Lenix*, *supra*, 44 Cal.4th at p. 613.) Farrell has not shown the court erred. First, he claims that the prosecutor's reasoning disproportionately affects racial minorities. This claim is largely a restatement of his race neutrality argument, which we have addressed above and reject for the same reasons. Second, he notes that the prosecutor did not examine PJN8 specifically about her attitudes toward law enforcement. But, while "an attorney's failure to meaningfully examine a prospective juror about a subject about which the attorney claims to be concerned can constitute evidence of pretext" (*Smith*, *supra*, 4 Cal.5th at p. 1152), it "does not necessarily demonstrate that those concerns were pretextual" (*Miles*, *supra*, 9 Cal.5th at p. 544). This logic applies especially where, as here, the prospective juror's responses speak for themselves. (*Smith*, at p. 1152.) The record shows the court made a " 'sincere and reasoned effort' " to evaluate the prosecutor's reason for challenging PJN8 and found it to be genuine. (See *Lenix*, at p. 614.) Farrell has not shown any basis to overturn this finding on appeal.

## III

### *Prospective Juror No. 6*

Farrell also challenges the trial court's third-step *Batson*/*Wheeler* analysis for PJN6. The prosecutor's stated reasons for challenging PJN6 were her responses to the prosecutor's questions about "whether or not police officers should be able to use force," specifically "that she did not like when they used force." Farrell argues this reason was "implausible" because, in his view, PJN6's comments on the use of force did not show any hostility.

12

Again, we review the court's finding under step three for substantial evidence. (*Lenix*, *supra*, 44 Cal.4th at p. 613.) But here, a threshold issue is apparent from the record. The trial court did not mention use of force in its evaluation of the prosecutor's reasons. It believed that PJN6 "made comments about the concern about being racially profiled and she had some exchanges about racial profiling" and concluded that PJN6, along with PJN8, "expressed some bias, it seemed, towards police based on their own experiences."

It is self-evident that, to comply with the third step, the trial court must evaluate the reasons actually given by the prosecutor. "[I]n judging why a prosecutor exercised a particular challenge, the trial court and reviewing court must examine only the reasons actually given. 'If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.'" (*People v. Jones* (2011) 51 Cal.4th 346, 365.) A court cannot make a " 'sincere and reasoned effort to evaluate the nondiscriminatory justifications offered' " if it misperceives the nature of those justifications. (See *Lenix*, *supra*, 44 Cal.4th at p. 614.)

The Attorney General points out that "the trial court is not required to make specific or detailed comments for the record to justify every instance in which the prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine." (*People v. Reynoso* (2003) 31 Cal.4th 903, 919.) But this principle presupposes that the trial court makes " ' "a sincere and reasoned attempt to evaluate *the prosecutor's explanation.*" ' " (*Ibid.*, italics added.) If the trial court correctly perceives and evaluates the prosecutor's explanation, it need not always explain in detail why it finds the explanation genuine. (See *People v. Gutierrez* (2017)

13

2 Cal.5th 1150, 1171-1172.) Indeed, as *Reynoso* goes on to say directly after the portion cited by the Attorney General, "This is particularly true where the prosecutor's race-neutral reason for exercising a peremptory challenge is based on the prospective juror's demeanor, or similar intangible factors, while in the courtroom." (*Reynoso*, at p. 919.) Here, however, the issue is not the court's failure to explain why it found the prosecutor's explanation genuine. It is the court's misperception of the nature of the explanation itself.[2]

We likewise disagree with the Attorney General's suggestion that the trial court "implicitly addressed and accepted the prosecutor's stated reason" for challenging PJN6. The record shows that the trial court believed the prosecutor was challenging PJN6 and PJN8 for similar reasons, i.e., their "concern about being racially profiled" and their "bias . . . towards police based on their own experiences." The trial court's comments do not address, implicitly or explicitly, PJN6's concern about police use of force, which was the prosecutor's stated reason for challenging her. We therefore cannot presume the court evaluated the prosecutor's stated reason and found it to be genuine.

For these reasons, the trial court erred by denying Farrell's *Batson/Wheeler* motion without determining whether the prosecutor's stated reason for challenging PJN6 was genuine. Based on our review of the record, however, we conclude the appropriate remedy is to remand the matter to the trial court to allow it to complete the third step of the *Batson/Wheeler* analysis for PJN6 in accordance with this opinion (see *People v. Johnson* (2006) 38 Cal.4th 1096, 1103-1104), rather than reversing the judgment and

_____

[2]     It appears the trial court was simply mistaken about the prosecutor's reason for challenging PJN6. The record does not reflect any misconduct by the court, and our discussion should not be read to imply anything of the sort.

remanding for a new trial. (Cf. *People v. Gonzales* (2008) 165 Cal.App.4th 620, 632 [remanding for a new trial where the prosecutor's stated reasons were "substantially unsupported by the record and implausible"].) The evaluation of a prosecutor's state of mind in this context lies particularly within the province of the trial judge. (*Lenix, supra*, 44 Cal.4th at p. 614.) The trial court should have the opportunity to make this evaluation in the first instance. We express no opinion on how the trial court should resolve this issue on the merits.

## DISPOSITION

The judgment is reversed and the matter remanded with the following directions: The trial court should attempt to conduct the third step of the *Batson/Wheeler* analysis for PJN6 in accordance with this opinion. If the court again denies Farrell's *Batson/Wheeler* motion, it shall reinstate the judgment. If the court grants the motion, or if the court finds that, due to the passage of time or any other reason, it cannot adequately address the issues

15

at this stage or make a reliable determination, it shall set the case for a new trial, if the prosecution so elects.


GUERRERO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.