## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) ) | No. 67332-7-I |
| Respondent, | ) ) | |
| v. | ) ) ) | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION AND SUBSTITUTING OPINION |
| MISTY LOU COOK, | ) ) | |
| Defendant, and | ) ) ) | FILED 5/28/13 |
| PIERRE DANIEL SPENCER-WADE, and each of them, | ) ) ) ) | Court of Appeals Division I State of Washington |
| Appellant. | ) | |

The respondent, State of Washington, has filed a motion for reconsideration.

The appellant, Pierre Daniel Spencer-Wade, has filed a response. The court has taken

the matter under consideration and has determined that the motion for reconsideration

should be denied.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and, it is further

ORDERED that the opinion in the above-referenced case filed January 28, 2013,

is withdrawn and a substitute opinion be filed in its place.

Done this 28th day of May, 2013.

FOR THE COURT:

_____

Spencer, A.C.J.

Becker, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67332-7-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| MISTY LOU COOK, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| PIERRE DANIEL SPENCER-WADE, and each of them, | ) ) | |
| Appellant. | ) ) | FILED: May 28, 2013 |

GROSSE, J. — A prosecutor's proffered reasons for the peremptory challenge of one of two African-American jurors on the venire are not sufficient to defeat a <u>Batson</u> challenge where, as here, the proffered reasons for the strike are unsupported by the record, appear "pretextual" because similar jurors were not excused from sitting, or appear to be mere "proxy" reasons for racially motivated excusal. Moreover, the record reflects that the trial court misapprehended the standard by which to weigh the proffered reasons. Contrary to the trial judge's reasoning, no pattern of discrimination need be shown to establish racial discrimination in jury selection. Accordingly, we reverse the judgment and conviction.

During Pierre Spencer-Wade's trial, the State used a peremptory challenge to exclude Juror No. 34, one of two African-American members of the venire. Spencer-Wade claims that by allowing the State to peremptorily strike

this juror, the trial court deprived him of his right to equal protection. The equal protection clause requires defendants to be "tried by a jury whose members are selected pursuant to nondiscriminatory criteria."[1] A prosecutor's use of a peremptory challenge based on race violates a defendant's right to equal protection.[2] In Batson v. Kentucky, the United States Supreme Court set forth a three-part analysis to determine whether a member of the venire was peremptorily challenged pursuant to discriminatory criteria.[3] First, a defendant must establish a prima facie case of purposeful discrimination.[4] Second, if the defendant establishes a prima facie case, then the burden shifts to the State to articulate a race-neutral explanation for challenging the juror.[5] Third, the trial court considers the explanation of the State and determines whether the defendant has established purposeful discrimination.[6]

Here, defense counsel objected to the prosecution's exercising its peremptory challenge of Juror No. 34. Spencer-Wade failed to set forth a prima facie case of purposeful discrimination as required under the first prong of Batson. But, as our Supreme Court noted in State v. Luvene, a prima facie showing is unnecessary once the State has offered a purported race-neutral explanation and the trial court has ruled on the ultimate question of intentional

---

[1] Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
[2] Batson, 476 U.S. at 86.
[3] 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).
[4] Batson, 476 U.S. at 93-96.
[5] Batson, 476 U.S. at 97-98.
[6] Batson, 476 U.S. at 98.

discrimination.[7] Thus, our analysis focuses on whether the State's reasons given for the peremptory challenge were race neutral.

The State gave the following reasons for its peremptory challenge:

> When Mr. Swaby [defense counsel] talked to Juror No. 5 about the quote, unquote, switch, Juror No. 34, without prompting, said, oh, yeah, and started laughing, and there was a definite, shall we say, energy between the two. This is later corroborated when Mr. Swaby called him brother, and he actually started giggling and had a connection there that I saw. He missed a simple corroboration question that I asked about Johnny and Jane, and he said one piece of information whether it was the phone records or the fact that someone has something to lose, would not help him solve this problem.
> I believe he said he was not able to reach a verdict on a case.
> There was one other issue that I wrote down here as him saying something about negative. He was a little too enthusiastic to be on this jury by him stating that if he or a family member were sitting in Mr. Spencer-Wade's position he would want to be on that particular jury.
> So, based on those reasons I did not feel comfortable having him on my jury.

Here, the record does not support many of the reasons offered by the State. For example, nowhere in the record does it appear that defense counsel referred to Juror No. 34 as "brother."[8] The State's claim that it struck Juror No. 34 because he was unable to reach a verdict on a case is incorrect. The State also claimed that Juror No. 34 missed the telephone records question. This was incorrect. It was Jurors Nos. 23 and 33 who stated that such records would not be helpful. Juror No. 34 did not miss the question. Moreover, not all of the

---

[7] 127 Wn.2d 690, 699, 903 P.2d 960 (1995) (citing Hernandez v. New York, 500 U.S. 352, 359, 111 S. Ct 1859, 114 L. Ed. 2d 395 (1991)).

[8] The term "brother" only appears during counsel's arguments to the court regarding Spencer-Wade's Batson challenge. The term is not used anywhere during the actual voir dire.

3

proffered reasons are race neutral. For example, the term "brother" is often associated with racial ethnicity. Its use by the State in its purported race-neutral explanation conjures up racial overtones, particularly where both the defense counsel and the defendant are black.[9]

In addition, a reason for challenging a juror may be deemed pretextual and thus not race neutral if other jurors made similar assertions. In a Batson case, a court must perform a comparative juror analysis to ascertain whether the State's reasons for striking an African-American juror were pretextual.[10] As

---

[9] Spencer-Wade also contends that the State confused the two black jurors when it argued that Juror No. 34 served on a jury that was unable to reach a verdict. The record shows that Juror No. 5, the only other black juror, stated that he served on a jury that did not reach a unanimous verdict but later clarified that it was a civil case and that the jury was able to reach a verdict, albeit not unanimously. In its briefing, the State conceded that the prosecutor confused Juror No. 34 with the other African-American juror, No. 5, but at oral argument the State retracted this concession. It argued instead that, while the prosecutor was admittedly "mistaken when he stated, 'I believe [Juror No. 34] said he was not able to reach a verdict on a case,'" it was not as a result of confusing the two African-American jurors. The State now contends that the prosecutor confused Juror No. 34 with either Juror Nos. 39 or 46, who "were the only prospective jurors who served on juries that did not reach a verdict." Regardless, the reason given for peremptorily challenging Juror No. 34 is not supported by the record and this alone can "raise[ ] an inference" that the remaining reasons are pretextual. Ali v. Hickman, 584 F.3d 1174, 1192 (9th Cir. 2009); see also Snyder v. Louisiana, 552 U.S. 472, 485, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008) ("[T]he prosecution's proffer of [one] pretextual explanation naturally gives rise to an inference of discriminatory intent," even where other, potentially valid explanations are offered."); Kesser v. Cambra, 465 F.3d 351, 360 (9th Cir. 2006) ("[I]f a review of the record undermines the prosecutor's stated reasons, or many of the proffered reasons, the reasons may be deemed a pretext for racial discrimination.") (internal quotation marks and citations omitted); United States v. Chinchilla, 874 F.2d 695, 699 (9th Cir. 1989) ("[T]he fact that two of the four proffered reasons do not hold up under judicial scrutiny militates against [the] sufficiency [of the remaining two reasons].").

[10] Reed v. Quarterman, 555 F.3d 364, 372-74 (5th Cir. 2009) (citing Miller-El v. Dretke (Miller-El II), 545 U.S. 231, 241, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005)).

noted in <u>Reed v. Quarterman</u>, "if the State asserts that it struck a black juror with a particular characteristic, and it also accepted nonblack jurors with that same characteristic, this is evidence that the asserted justification was a pretext for discrimination, even if the two jurors are dissimilar in other respects."[11] The State's contention that Juror No. 34 "missed a simple corroboration question" is not well taken. The State asked the jurors a hypothetical question about Johnny and Jane, one of whom broke a lamp. The State inquired into whether knowing Johnny's past misconduct would help a juror decide whether it was Johnny who broke the lamp. Juror No. 34 raised his hand to indicate that he did not think the past conduct would have a bearing on Johnny's guilt. It is difficult to understand why this reason could be a valid one to strike a juror. Juror No. 34's response is in accord with the rules of evidence. ER 404(b) prohibits the introduction of prior acts to show action in conformity therewith. Additionally, fifteen other jurors answered similarly; five of whom were selected to serve on the jury. Not striking those jurors who made similar statements as Juror No. 34 supports the assertion that the basis proffered for Juror No. 34's removal was pretextual. Finally, the State recalled that Juror No. 34 had a negative experience with the police. But Juror No. 34 stated that he also had positive experiences with the police and harbored no bias against the police.

In addressing the viability of the State's <u>Batson</u> challenge, the court made the following observations:

> Okay. Mr. Kim [the prosecutor] doesn't have to give reasons
> not related to race because there was no pattern that was shown.

---

[11] 555 F.3d 364, 376 (5th Cir. 2009) (citing <u>Miller-El II</u>, 545 U.S. at 246).

But he did anyway. And I guess I would agree with him in that I felt the juror was just a little bit too enthusiastic. And, he did, yes, he did say he had positive and negative wouldn't impact him, but he did have a negative experience with law enforcement.

So believe me, I'd rather see Juror No. 34 seated, but I think Mr. Kim has a motion to disqualify this juror. Or to - - I've already ruled, but those are the reasons I would do that. And Juror No. 34 will be excused.

The trial court's statement that the prosecutor did not have to give reasons because no pattern of discrimination was shown is incorrect. Batson does not require a pattern of racial discrimination.[12] As noted in Batson, "'a consistent pattern of official racial discrimination' is not 'a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.'"[13]

The trial court's erroneous conclusion that the State needed to show a pattern of racial discrimination is not, however, dispositive. This is so because the court proceeded to rule that two reasons the State offered, namely, Juror No. 34's enthusiasm and negative experience with law enforcement, were sufficient to refute any discrimination on the part of the State. But neither of those reasons was sufficient.

The court's recollection of the voir dire jibed with the State's recollection that the juror was too enthusiastic and had a negative experience. But at the same time, the court stated that it would prefer to see the juror seated. It is difficult to understand how the trial court reconciled these two observations.

---

[12] Batson, 476 U.S. at 96.
[13] Batson, 476 U.S. at 95 (quoting Arlington Heights v. Metropolitan Housing Dep't Corp., 429 U.S. 252, 266 n.14, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).

Although a neutral explanation is one based on something other than the race of the juror and need not rise to the level justifying a challenge for cause, the neutrality of that explanation must be viewed in the totality of the prosecutor's comments. It is the circumstances of the entire voir dire that must be examined by the trial court to determine if removal of 50 percent of the African-American jurors, in a trial of an African-American defendant, represented by an African-American lawyer, was purposeful. During the voir dire, it was the State who first raised the issue of Spencer-Wade's race. The prosecutor spoke of racial inequities suffered by African-Americans and inquired into any bias the jurors might have that would make them more lenient toward Spencer-Wade because of his race. The issue of race was not an issue at trial. There was no claim of inappropriate police behavior or other racial overtones in the crime with which Spencer-Wade was charged. Here, the evidence sufficiently demonstrates that the removal of Juror No. 34 because of his enthusiasm was a proxy reason for striking him on account of his race. The State's race-neutral reason for the juror's exclusion must not be a mere "proxy" for race. The reference to "brother" and confusing of one of the African-American jurors with the other raises a red flag that there is some discriminatory intent.

Here, the State struck 50 percent of the members of one racial group. That raises inferences of discrimination.[14] The trial court erred in denying Spencer-Wade's Batson challenge.

---

[14] See Turner v. Marshall, 63 F.3d 807, 813 (9th Cir. 1995) (finding that removal of five out of nine jurors of the same cognizable racial group, representing 55 percent, was sufficient to raise an inference of discrimination).

We reverse the conviction and remand for a new trial.  Accordingly, we do not address the other issues raised by Spencer-Wade.

WE CONCUR: