2016 FEB -8 AM 11: 22


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72356-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| TEREZ LEJUAN BARDWELL, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 8, 2016 |
| | ) | |

LEACH, J. — A prosecutor's use of a peremptory challenge based on race violates a defendant's right to equal protection. But where, as here, the trial court finds the State's stated reason for challenging the juror race neutral, no violation occurs. Because the record supports the trial court's finding, the trial court properly denied Bardwell's request for a new trial.

Bardwell also contends, and the State concedes, that insufficient evidence supports his conviction for second degree possession of stolen property. We accept the State's concession. As agreed by Bardwell, we remand for his conviction of the lesser offense of third degree possession of stolen property.[1]

---

[1] Bardwell also contended that his right to a public trial was violated but properly concedes in his reply brief that under State v. Love, 183 Wn.2d 598, 354 P.3d 841 (2015), petition for cert. filed, No. 16-__ (U.S. Jan. __, 2016), his right to a public trial was not violated when the court accepted written rather than oral peremptory challenges in open court and filed those challenges in the record.

FACTS

Fleeing from the police, Terez Bardwell ran a red light and crashed his car into two other cars. Bardwell ignored police commands to stop and ran from the scene, carrying a red bag. The police found Bardwell hiding nearby. They recovered a red bag near Bardwell's hiding place. The bag contained cash, a purple wallet, and a broken wooden drawer containing some jewelry and mail addressed to a residence located near the collision. Someone had burglarized that residence earlier that same day. Police found additional items on Bardwell's person and in the car. The recovered items belonged to the family who lived at the residence. The police also found a .380 Smith & Wesson handgun on the floor of Bardwell's car.

The State charged Bardwell with first degree unlawful possession of a firearm, residential burglary, attempting to elude a pursuing police vehicle, and second degree possession of stolen property.

During voir dire, the court asked the panel whether any juror had a friend or close relative accused of a crime. Juror 25 responded affirmatively. She said that she had an uncle in jail, convicted for assault six years ago. Juror 25 also replied that this situation would not influence her ability to be a fair and impartial juror.

Bardwell raised a <u>Batson</u>[2] challenge to the State's dismissal of juror 25 with its third peremptory challenge. Outside the presence of the jury, the court directed Bardwell to state his reasons for the <u>Batson</u> challenge. Bardwell answered that the State must justify its decision to exclude juror 25 because both he and juror 25 were African American. Bardwell also noted that the State failed to ask juror 25 any follow-up questions about her relative in prison and how that would affect her view of the case.

In response, the State contended that it was not required to give a reason because it used a peremptory challenge and the reasons given by defense did not make a prima facie showing that race motivated the challenge. Nevertheless, the State set forth its reasons for peremptorily dismissing juror 25. First, the State expressed concern about juror 25's demeanor when she responded to the court's question about her relative in prison. Second, the State noticed that on two separate occasions, juror 25 appeared to be sleeping. The trial court ruled that the State had identified race-neutral reasons for exercising the peremptory challenge.

A jury convicted Bardwell of all counts as charged. Bardwell appeals.

---

[2] <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

ANALYSIS

Batson Challenge

The equal protection clause guarantees a defendant the right to be tried by a jury selected free from racial discrimination.[3] "A prosecutor's use of a peremptory challenge based on race violates a defendant's right to equal protection."[4] We follow the three-part test described by the United States Supreme Court in Batson v Kentucky[5] to determine if discrimination played a role in a state's exercise of its peremptory challenge of a juror. First, the defendant must establish a prima facie case of purposeful discrimination;[6] second, the burden shifts to the State to articulate a race-neutral explanation for challenging the juror;[7] and third, the trial court must determine if the defendant has demonstrated purposeful discrimination.[8]

In State v. Saintcalle,[9] our Supreme Court recognized a need to change the existing Batson procedures in Washington but declined to do so on the briefing before it. The court found that "Batson . . . is failing us"[10] because modern-day racism is not overt but, rather, is embodied in "stereotypes that are

---

[3] U.S. CONST. amend. XIV; Batson, 476 U.S. at 85.
[4] State v. Cook, 175 Wn. App. 36, 39, 312 P.3d 653 (2013).
[5] Batson, 476 U.S. at 93-96.
[6] Batson, 476 U.S. at 93-96.
[7] Batson, 476 U.S. at 97-98.
[8] Batson, 476 U.S. at 98.
[9] 178 Wn.2d 34, 52, 55, 309 P.3d 326 (2013).
[10] Saintcalle, 178 Wn.2d at 46.

ingrained and often unconscious."[11] "Unconscious stereotyping upends the Batson framework," which is "equipped to root out only 'purposeful' discrimination, which many trial courts probably understand to mean conscious discrimination"[12]

Nonetheless, the lead opinion applied Batson, leaving it as the controlling authority we must follow. The lead opinion confirmed the deference a reviewing court must give to the trial court under the existing Batson "purposeful discrimination" standard:

> A trial court's decision that a challenge is race-neutral is a factual determination based in part on the answers provided by the juror, as well as an assessment of the demeanor and credibility of the juror and the attorney. Batson, 476 U.S. at 98 n.21. The defendant carries the burden of proving purposeful discrimination. Id. at 93. The trial judge's findings are "accorded great deference on appeal" and will be upheld unless proved clearly erroneous. Hernandez [v. New York], 500 U.S. [352,] 364[, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)]. Deference to trial court findings is critically important in Batson cases because the trial court is much better positioned than an appellate court to examine the circumstances surrounding the challenge. Further, deference is important because trial judges must have some assurance that the rest of the trial will not be an exercise in futility if it turns out an appellate court would have ruled on a Batson challenge differently.[13]

This standard does not require that the trial court analyze the first step of whether the defendant has established a prima facie case of purposeful discrimination if,

---

[11] Saintcalle, 178 Wn.2d at 44.
[12] Saintcalle, 178 Wn.2d at 48.
[13] Saintcalle, 178 Wn.2d at 55-56.

as here, the State articulates a race-neutral explanation for its challenge.[14] "'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'"[15] "Batson requires the judge to determine whether a race-neutral reason offered for a challenge is honest, and [trial court] judges are much better situated than appellate judges to evaluate the honesty of the lawyers who practice in [trial] court."[16] The State's explanation of its reasons "must be viewed in the totality of the prosecutor's comments."[17]

Bardwell argues that the trial court erred in accepting the prosecutor's explanations because "African Americas are over-represented in the criminal justice system," the prosecutor did not ask juror 25 any follow-up questions about her relative's situation and the impact it had on her, and, further, the State did not remove a white juror whose family member had been accused of a crime.

Standing alone, Bardwell's contention that he and juror 25 belong to the same protected class does not establish prejudice.

---

[14] See, e.g., State v. Luvene, 127 Wn.2d 690, 699, 903 P.2d 960 (1995) (citing Hernandez, 500 U.S. at 359).
[15] Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (alteration in original) (quoting Hernandez, 500 U.S. at 360).
[16] United States v. Roberts, 163 F.3d 998, 1000 (7th Cir. 1998).
[17] Cook, 175 Wn. App. at 43.

United States v. Bishop[18] and Turnbull v. State[19] do not support his allegations of prejudice. Both cases dealt with questions focusing on jurors' perceptions of police as indicative of an improper proxy for race in jury selection. In Bishop, the prosecutor excused a juror because she resided in a predominantly African American neighborhood, arguing that she would likely be anesthetized to violence and believe that police are unfair.[20] The court rejected that rationale as being "little more than the assumption that one who lives in an area heavily populated by poor black people could not fairly try a black defendant."[21] Likewise, in Turnbull, the State asked jurors if they thought police racially profiled people. Five African American individuals answered affirmatively. The State struck all five jurors, four peremptorily and one for cause.[22] The Turnbull court concluded that the State's question was little more than "subterfuge," noting that racial profiling was not an issue in the case and that the State did not ask the question to learn the jurors' perceptions about law enforcement.[23]

---

[18] 959 F.2d 820 (9th Cir. 1992).
[19] 959 So. 2d 275 (Fla. Dist. Ct. App. 2006).
[20] Bishop, 959 F.2d at 825.
[21] Bishop, 959 F.2d at 825.
[22] Turnbull, 959 So. 2d at 276.
[23] Turnbull, 959 So. 2d at 276-77.

Bishop, Turnbull, and similar pretext decisions do not support Bardwell because of the difference in the total circumstances here from those in cases where prosecutors used pretextual criteria to purposefully discriminate.

Bardwell argues that the State's retention of the white juror with an accused family member clearly demonstrates racial bias. While courts have found purposeful discrimination where the reason offered by the prosecutor applies equally to an otherwise similar nonblack juror, Bardwell has not shown that is the case here.[24] Here, the State offered two additional reasons for its peremptory challenge: (1) the demeanor of juror 25 when responding to the question and (2) the State's observation that juror 25 appeared to be asleep on two separate occasions.

Bardwell contends that the prosecutor's failure to ask follow-up questions about juror 25's relative shows that the prosecutor used this as a pretext. But Bardwell cites no authority requiring an attorney to follow up with subsequent questions. Bardwell's reliance on Miller-El v. Dretke,[25] is misplaced. In Miller-El, the prosecution struck 91 percent of the black panelists.[26] The Miller-El Court noted that a comparison of similarly situated white and black venire members provided "more powerful" evidence of racial discrimination.[27] There, the State

---

[24] See Cook v. LaMarque, 593 F.3d 810, 815 (9th Cir. 2010).
[25] 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005).
[26] Miller-El, 545 U.S. at 240-41.
[27] Miller-El, 545 U.S. at 241.

struck a black male whom the Court viewed as an ideal juror for the State but did not strike white panelists with similar viewpoints.[28] The Court found additional indications of the prosecution's bias in its request to shuffle the array of panelists after black venire members reappeared at the front of the line.[29] Further, the prosecutors gave a bland description of the death penalty to almost all of the white panelists before inquiring about their individual feelings on the death penalty but used a graphic description of the death penalty when speaking to over half of the black panelists.[30] The circumstances present in Miller-El clearly demonstrated racial discrimination. The circumstances present here raise no comparable level of suspicion.

Also, the State struck juror 25 based on her demeanor when she answered the question about a relative in prison, not because she had a relative in prison. In addition, the State observed two instances where the juror appeared to be sleeping. The record supports the trial court's finding that these reasons were not pretextual.

Moreover, in reaching its conclusion that the Batson challenge lacked merit, the trial court had the opportunity to observe the prosecutor's demeanor. Here, the trial court analyzed the responses of the juror and the explanation

---

[28] Miller-El, 545 U.S. at 247.
[29] Miller-El, 545 U.S. at 254-55.
[30] Miller-El, 545 U.S. at 255-56.

offered by the prosecutor. The trial court found that the prosecutor had a good faith concern that juror 25 would be predisposed to the defense because of her demeanor and body language when responding about her relative's lengthy incarceration. Further, the trial court found the prosecutor's observation that the juror was sleeping on two separate occasions credible. As noted previously, the trial court is in the best position to evaluate credibility of a witness.

Bardwell's reliance on Snyder v. Louisiana[31] is misplaced. Snyder did not hold that a judge accepting a demeanor-based explanation for a peremptory challenge must have personally seen the demeanor. Although noting the importance of a judge's observations of the demeanor, nothing in the opinion requires that the judge observe the demeanor.[32]

This analysis comports with the later United States Supreme Court opinion in Thaler v. Haynes,[33] where the Court noted that a judge, even though he himself did not observe the juror's demeanor, need not reject a demeanor-based explanation for a challenge to a jury by a prosecutor. Instead, a court may accept the demeanor-based objection because "the best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor."[34]

---

[31] 552 U.S. 472, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008).
[32] Snyder, 552 U.S. at 477.
[33] 559 U.S. 43, 49, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010).
[34] Thaler, 559 U.S. at 49.

Here, the trial court found the attorney's demeanor determinative and his observations about the sleeping juror credible. Bardwell fails to demonstrate that the trial court ruling was clearly erroneous.

Sufficiency of the Evidence

Bardwell challenges the sufficiency of the evidence to support his conviction of second degree possession of stolen property because the record contains insufficient evidence to establish that the value of the stolen items exceeded $750, an essential element of second degree possession of stolen property.[35]

Sufficient evidence supports a conviction if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[36] In order to prove that second degree possession of stolen property as charged, the State had to prove that the defendant possessed stolen property exceeding a value of $750. The State concedes insufficient evidence supported the charge. A review of the record supports the State's concession.

Bardwell agrees that the appropriate remedy is a remand to the trial court to convict him of the lesser degree charge of third degree possession of stolen property.

---

[35] RCW 9A.56.160(1)(a).
[36] State v.Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Accordingly, we deny Bardwell's <u>Batson</u> challenge and remand for resentencing on the lesser degree charge of third degree possession of stolen property.

_Leach, J._

WE CONCUR:

_Appelwick, J_                    _Cox, J._