FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 OCT 16 AM 9: 19

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Detention of ) | No. 74770-3-I |
| ) | |
| GREGORY COLEY, ) | |
| ) | |
| Appellant. ) | |
| ) | |
| STATE OF WASHINGTON, ) | |
| ) | |
| Respondent, ) | |
| v. ) | |
| ) | |
| GREGORY COLEY, ) | UNPUBLISHED OPINION |
| ) | |
| Defendant. ) | FILED: October 16, 2017 |

VERELLEN, C.J. — During voir dire in a sexually violent predator unconditional release trial, the State exercised a peremptory challenge against a black juror. The next morning, Gregory Coley objected based on Batson v. Kentucky.[1] Because the objection occurred before any evidence was presented, we conclude it was timely.

The State offered two race-neutral reasons for challenging juror 5. The trial court accepted those reasons and found that the State was not motivated by racial animus. Because the reasons are supported by the record and do not reveal pretext, we conclude the trial court's decision was not clearly erroneous.

---

[1] 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

At trial, the court excluded a defense witness because she was not timely disclosed. Because the testimony would have been cumulative, we conclude Coley was not prejudiced by the exclusion and his counsel was not ineffective.

The trial court limited the testimony of Dr. Richard Wollert, a defense expert witness. Dr. Wollert was not allowed to testify beyond his report. Because Coley did not make an adequate offer of proof as to the nature of Dr. Wollert's excluded testimony, we conclude the trial court was unable to conduct a harmless error analysis under the rules of evidence or Burnet v. Spokane Ambulance.[2] We decline to grant any relief on appeal.

Dr. Wollert was also precluded from relating a nontestifying expert's opinion consistent with his opinion that Coley was a juvenile-only offender. Because an expert should not act as a conduit to restate a nontestifying expert's opinions, we conclude it was within the discretion of the trial court to limit Dr. Wollert's testimony.

We conclude there was no cumulative error. Therefore, we affirm.

## FACTS

Since 2002, Coley has been civilly committed at the Special Commitment Center (SCC) as a sexually violent predator. In 2016, a trial was held to determine whether Coley continued to be a sexually violent predator subject to continued commitment.

During voir dire, the State exercised a peremptory challenge against juror 5. Coley and juror 5 are both black. The next morning before opening statements,

---

[2] 131 Wn.2d 484, 933 P.2d 1036 (1997).

Coley raised a <u>Batson</u> challenge to juror 5's dismissal and moved for mistrial. The trial judge denied the motion.

At trial, Coley called six witnesses from the SCC to discuss his positive behavioral changes. He also tried to offer testimony from a seventh SCC witness, but the trial court excluded the testimony because Coley did not timely disclose the witness.

The State's expert, Dr. Dale Arnold, diagnosed Coley with other specified paraphilic disorder with pedophilic, coercive, and sadistic traits under the *Diagnostic and Statistical Manual of Mental Disorders 5* (DSM-5) (American Psychiatric Association 2013).

Coley offered the expert testimony of Dr. Wollert. In his report, Dr. Wollert relied on the older DSM-IV and declined to diagnose Coley with paraphilia not otherwise specified nonconsent. When Dr. Wollert began to critique Dr. Arnold's diagnosis and his use of the DSM-5, the trial court limited Dr. Wollert's testimony to the opinions contained in his report. Dr. Wollert also testified that Coley was a juvenile-only offender with minimal risk to reoffend, but the court prohibited Dr. Wollert from bolstering his juvenile-only offender opinion with statements by another expert.

The jury found that Coley continued to be a sexually violent predator. As a result, the court entered an order of commitment to the SCC "until such time as [Coley's] mental abnormality and/or personality disorder has so changed that [he] is

safe to be conditionally released to a less restrictive alternative or unconditionally discharged."[3]

Coley appeals.

ANALYSIS

I. Batson Challenge

Coley argues the trial court erred in denying his Batson challenge.

A trial court's decision to deny a Batson challenge "will be reversed only if the defendant can show it was clearly erroneous."[4] To determine whether the State's peremptory challenge is discriminatory:

> First, the defendant must establish a prima facie case that 'gives rise to an inference of discriminatory purpose.' Second, if a prima facie case is made, the burden shifts to the prosecutor to provide an adequate, race-neutral justification for the strike. Finally, if a race-neutral explanation is provided, the court must weigh all relevant circumstances and decide if the strike was motived by racial animus.[5]

*A. Timeliness*

As a threshold matter, the State contends Coley waived any objection to the State's peremptory challenge by not raising it before the venire was dismissed.

A Batson challenge must "be brought at the earliest reasonable time while the trial court still has the ability to remedy the wrong."[6] In City of Seattle v. Erickson, the defendant did not object until after the jury had been impaneled and the venire had been dismissed for the day, but before the parties presented any evidence.[7] Our

---

[3] Clerk's Papers (CP) at 152.

[4] City of Seattle v. Erickson, 188 Wn.2d 721, 727, 398 P.3d 1124 (2017).

[5] Id. at 726-27 (citations omitted) (quoting Batson, 476 U.S. at 94).

[6] Id. at 729.

[7] 188 Wn.2d 721, 729, 398 P.3d 1124 (2017).

Supreme Court concluded the timing was not ideal, but Erickson's challenge was timely.[8]

Here, Coley objected the morning after the jury had been impaneled and the venire dismissed, but before opening statements. Consistent with Erickson, Coley's objection was timely, even though he could have raised it earlier.

Because Coley's Batson challenge was timely, we need not address Coley's argument that his counsel was ineffective for failing to timely object.

*B. Prima Facie Purposeful Discrimination*

The State also argues Coley has failed to present a prima facie case of purposeful discrimination. "The trial court must recognize a prima facie case of discriminatory purpose when the sole member of a racially cognizable group has been struck from the jury."[9] But a "prima facie showing is unnecessary once the State has offered a purported race-neutral explanation and the trial court has ruled on the ultimate question of intentional discrimination."[10]

In its oral ruling, the trial court mentioned it could not discern "a *pattern* by the State of excusing . . . minority candidates"[11] and concluded the State's peremptory challenge of juror 5 did "not constitute prima facie purposeful discrimination."[12] But the trial court still considered the State's race-neutral explanations and concluded the

---

[8] Id. at 730.

[9] Id. at 734.

[10] State v. Cook, 175 Wn. App. 36, 39, 312 P.3d 653 (2013).

[11] Report of Proceedings (RP) (Jan. 12, 2016) at 143 (emphasis added).

[12] CP at 164.

challenge of juror 5 "was based on factors other than race which are adequate and neutral reasons for exercising the peremptory challenge."[13]

In Erickson, our Supreme Court determined the trial court improperly applied the first step of the Batson analysis when it required a pattern of discrimination to show prima facie purposeful discrimination.[14]

Here, the trial court's references to a "pattern" of discrimination relates to the first step of Batson. Although the trial court did not have the benefit of the 2017 Erickson decision, it was mistaken as to the standard for establishing a prima facie case of discrimination. But the court heard the State's reasons for striking the juror and reached the final step of Batson.

### C. Race-Neutral Explanation

Under the second step in the Batson analysis, the court only considers the facial validity of the State's rationale.[15] This consideration "does not demand an explanation that is persuasive, or even plausible."[16] "A venireperson's specific responses and demeanor during voir dire may constitute neutral explanations for exercising a peremptory challenge."[17] Here, the State challenged juror 5 based on his specific response concerning brain chemistry and his demeanor during voir dire.

---

[13] Id.

[14] Erickson, 188 Wn.2d at 732-33.

[15] Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995) (quoting Hernandez v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)).

[16] Id. at 767-68.

[17] State v. Burch, 65 Wn. App. 828, 840, 830 P.2d 357 (1992).

### D. Racial Animus

Coley's argument that the State's proffered rationale was a pretext for race concerns the third step of <u>Batson</u>—whether the State's reasons given for the peremptory challenge were motivated by racial animus.

The State's reasons must be supported by the record and not be a pretext or proxy for race; otherwise, the challenge is presumed to be motivated by discriminatory intent.[18] "[A] neutral explanation is one based on something other than the race of the juror and need not rise to the level justifying a challenge for cause."[19] The reviewing court considers the overall circumstances, including any "red flags" of a discriminatory motive.[20] The State's explanation may be a pretext for purposeful discrimination if the proffered reason for striking a minority panelist applies just as well to an otherwise similar nonminority panelist who is permitted to serve.[21]

Here, the State expressed concern about juror 5's ability to "listen to psychologists and take in that testimony" because he had strong opinions on brain chemistry. During voir dire, Coley's counsel posed the question, "[D]o you think there will be a day when race is not an issue[?]"[22] Juror 5 gave a comparatively lengthy

---

[18] <u>Batson</u>, 476 U.S. at 98; <u>see also</u> <u>Reed v. Quarterman</u>, 555 F.3d 364, 368 (5th Cir. 2009); <u>Purkett</u>, 514 U.S. at 768 ("implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination").

[19] <u>Cook</u>, 175 Wn. App. at 43.

[20] <u>Id.</u> at 44 (prosecutor's peremptory challenge based in part on defense counsel's use of the term "brother" when speaking to an African-American juror and prosecutor's purportedly "confusing" one African-American juror with another "raises a red flag that there is some discriminatory intent").

[21] <u>Id.</u> at 41.

[22] RP (Jan. 11, 2016) at 87.

response, noting that the "brain chemistry of homo sapiens is still in the Stone Age."[23] When asked whether individuals can be objective, juror 5 stated individuals attempting to be objective resort to "Stone Age brain chemistry" when a topic touches their core issues.[24]

The State's case turned largely on expert testimony regarding Coley's mental impairments and his ability to overcome those impairments. A juror with a strongly held view on how individuals' brains work when trying to remain objective may also have a rigid mindset on other aspects of mental functioning. The State's concern did not equate to racial animus.

The State was also worried about juror 5's ability to deliberate with other jurors because he dominated the conversation during voir dire. Juror 5 spoke five separate times during voir dire. In one instance, Coley's counsel asked juror 5 about his feelings concerning jury duty, and juror 5 provided a narrative response about the history of sex abuse in his family. He also spoke two times without being called on, including the response about brain chemistry.

Other members of the venire actively participated and were not excused, but the record does reveal juror 5 responded and interjected more than other prospective jurors. And the trial judge acknowledged, "I had concerns myself after hearing some of his answers."[25] While demeanor has been recognized as a potential proxy for

---

[23] Id. at 88.

[24] Id. at 88-90.

[25] RP (Jan. 15, 2016) at 959.

racial animus,[26] trial courts are still afforded "great deference" when it determines the credibility of the State's reasons.[27] The trial court was able to observe juror 5's demeanor, it shared the State's concern, and the record supports that there was a difference.

Viewing the State's challenge under the totality of the circumstances, the record does not raise a red flag of discriminatory intent. We conclude the record supports the trial court's ruling that the State did not have a discriminatory motive in exercising its peremptory challenge of juror 5.

*E. New Standard to Replace Batson*

Alternatively, Coley argues for a new "reasonable probability" standard to replace Batson. Our Supreme Court has repeatedly acknowledged its strong concerns that the existing standard of purposeful discrimination fails to remove racial discrimination from jury selection.[28] A proposed rule addressing these concerns is pending before our Supreme Court in its administrative rule-making capacity. In Erickson, our Supreme Court adopted a change to the first step in Batson "to ensure a robust equal protection guaranty."[29] The Supreme Court also confirmed it "has the

---

[26] Proposed General Rule 37 (Wash. 2017), https://perma.cc/YB3Q-U4ZL (demeanor has "historically been used to perpetuate exclusion of minority jurors"). The rule was published as GR 36 but was renumbered as GR 37 after adoption of a court security rule numbered GR 36. Erickson, 188 Wn.2d at 738 n.5.

[27] State v. Evans, 100 Wn. App. 757, 764, 998 P.2d 373 (2000) (citing Burch, 65 Wn. App. at 840-41).

[28] State v. Saintcalle, 178 Wn.2d 34, 48-49, 309 P.3d 326 (2013), abrogated by Erickson; Erickson, 188 Wn.2d at 737-38 (Stephens, J. concurring) ("We are unlikely to see different outcomes unless courts are willing to more critically evaluate proffered race-neutral justifications in future cases.").

[29] Erickson, 188 Wn.2d at 734 (on remand for new trial, it appears the core of the existing Batson standard remains in place).

power to alter or replace the Batson framework" and did not adopt a change to the current standard of purposeful discrimination.[30]

If not clear before Erickson, it is clear now that our Supreme Court is the architect of efforts to address the inadequacies of Batson. Out of deference, we decline to adopt a new standard and potentially run afoul of the ongoing work of our Supreme Court.

## II. Ineffective Assistance of Counsel–Witness Disclosure

Coley contends his trial counsel provided ineffective assistance of counsel by failing to timely disclose the SCC witness, Hudson.[31]

To establish ineffective assistance of counsel, a defendant must show

(1) defense counsel's representation was deficient, *i.e.,* it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.,* there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.[32]

The likelihood of a different result must be substantial and not merely speculative.[33] "A reviewing court need not address whether counsel's performance was deficient if it can first say that the defendant was not prejudiced."[34]

Here, the State contends the exclusion did not prejudice Coley. Coley's counsel advised the trial court that Hudson had worked with Coley "significantly" over

---

[30] Id. at 732.

[31] The record does not reveal Hudson's first name.

[32] State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).

[33] State v. Crawford, 159 Wn.2d 86, 99-100, 147 P.3d 1288 (2006).

[34] In re Pers. Restraint of Rice, 118 Wn.2d 876, 889, 828 P.2d 1086 (1992) (citing Strickland, 466 U.S. at 697).

10

several years and was expected to testify concerning the positive changes in Coley's behavior. But Coley presented six other witnesses from SCC, including rehabilitation counselors and case managers who worked with Coley for several years and who testified concerning his positive behavioral changes. After the fifth witness, the court remarked, "[T]he SCC witnesses are getting a bit cumulative and monotonous . . . . They're all saying pretty much the same thing."[35] Coley does not establish that Hudson's testimony would not be cumulative given the testimony of the other six SCC witnesses.

We conclude that Coley did not receive ineffective assistance of counsel because Coley does not establish a reasonable probability that the result would have been different if Hudson had been allowed to testify.

### III. Dr. Wollert's Expert Testimony

Coley argues the trial court abused its discretion when it limited the testimony of his expert witness, Dr. Wollert.

We review a trial court's decision to exclude expert witness testimony for abuse of discretion.[36] Even if a court's evidentiary decision is erroneous, the appellant must establish the error was prejudicial.[37] "Error will not be considered prejudicial unless it affects, or presumptively affects, the outcome of the trial."[38] The

---

[35] RP (Jan. 14, 2016) at 678.

[36] State v. Willis, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004).

[37] Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983).

[38] Id.

improper exclusion of evidence is harmless if the evidence was inconsequential or cumulative.[39]

"In order to obtain appellate review of trial court action in excluding evidence, there must be an offer of proof."[40] The burden is on the proponent of the evidence to make an adequate offer of proof.[41]

> An offer of proof serves three purposes: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review.[42]

A formal offer of proof is not necessary if the substance of the excluded evidence is apparent from an extended colloquy on the record.[43] But an offer of proof, extended colloquy, or context must be "sufficient to advise the appellate court whether the party was prejudiced by the exclusion of the evidence."[44]

Here, the State's expert, Dr. Arnold, diagnosed Coley with other specified paraphilic disorder with pedophilic, coercive, and sadistic traits under the DSM-5. In his report, Dr. Wollert relied on the DSM-IV and stated:

> [Coley] does not meet the criteria for the *Paraphilia Not Otherwise Specified Nonconsent* because this term medicalizes the crime of rape, and the American Psychiatric Association has never accepted a proposed paraphilia that would allow rapists to argue that special legal exceptions should be made for them because they suffer from a mental

---

[39] Id.; Holmes v. Raffo, 60 Wn.2d 421, 424, 374 P.2d 536 (1962).

[40] Jankelson v. Cisel, 3 Wn. App. 139, 143, 473 P.2d 202 (1970).

[41] ER 103(a)(2); Estate of Bordon ex rel. Anderson v. State, Dep't of Corrections, 122 Wn. App. 227, 246, 95 P.3d 764 (2004) (appellate court declined to determine admissibility of testimony by purported expert where proponent had made no offer of proof of what the expert would say if allowed to testify).

[42] State v. Ray, 116 Wn.2d 531, 538, 806 P.2d 1220 (1991).

[43] Id. at 539.

[44] State v. Vargas, 25 Wn. App. 809, 817, 610 P.2d 1 (1980).

illness. In the course of compiling DSM-5, for example, it rejected a proposed paraphilia called "Paraphilic Coercive Disorder" that was the equivalent of Paraphilia Not Otherwise Specified Nonconsent. Other proposals for the medicalization of rape were also rejected when DSM-III, DSM-IIIR, and DSM-IV were compiled.[45]

During Dr. Wollert's testimony, the State raised several objections to Coley's questions that went beyond the scope of Dr. Wollert's report. In colloquy, Coley argued, "[Dr. Wollert] talks about paraphilic coercive disorder. He talks about the old paraphilia not otherwise specified. He's talking about all these things that are the exact same thing. The only difference is we've got new terminology and that's it."[46] The trial court limited Dr. Wollert's testimony to the opinions in his report.

Dr. Wollert later testified about why he did not diagnose Coley with paraphilia or paraphilia not otherwise specified nonconsent. He also explained why he rejected other potential diagnoses, including paraphilic coercive disorder and sexual sadism. And he testified, without objection, that he did not find pedophilia as a diagnosis for Coley.

Dr. Wollert testified that Coley had changed and "his behavior is under his control."[47] Dr. Wollert also testified that he did not believe Coley had ever committed an adult sexually violent offense. And Dr. Wollert believed Coley's prior sexual misconduct was merely typical juvenile delinquent behavior and he was a juvenile-only offender in the context of risk assessment.

As emphasized at oral argument, Coley suggests the questions the State objected to reveal that Dr. Wollert would have testified that Dr. Arnold's diagnosis

---

[45] Ex. 62 at 74 (emphasis added).

[46] RP (Jan. 15, 2016) at 853.

[47] Id. at 869.

was incorrect. But the record offers no articulation of the specific testimony Dr. Wollert would offer to address Dr. Arnold's use of DSM-5; it merely suggests Dr. Wollert's general disapproval of Dr. Arnold's diagnosis.

Dr. Wollert's proffered testimony was clear for some of the sustained objections, e.g., his opinion that paraphilias of a juvenile do not carry over into adulthood. But for most of the excluded testimony, Coley made no offer of proof and it is not clear from the colloquy or context what specific testimony was being proffered. Coley identified general topics he wanted to explore, but failed to identify what specific criticism Dr. Wollert would offer, especially as to Dr. Arnold's diagnosis of other specified paraphilic disorder with pedophilic, coercive, and sadistic traits.

Because the record does not include a formal offer of proof or other equivalent showing, the trial court was unable to assess the admissibility of the evidence. And on this record, we cannot conduct a meaningful review concerning whether Coley suffered any prejudice.

Alternatively, Coley argues the trial court failed to conduct a Burnet analysis when it limited Dr. Wollert's testimony as a sanction for a discovery violation.

"Discovery sanctions may be imposed under CR 26 or CR 37."[48] Before imposing one of the harsher sanctions allowed under CR 37, "the trial court must consider on the record (1) whether a lesser sanction would probably suffice, (2)

---

[48] Carlson v. Lake Chelan Cmty. Hosp., 116 Wn. App. 718, 737, 75 P.3d 533 (2003).

whether the violation at issue was willful or deliberate, and (3) whether the violation substantially prejudiced the opposing party's ability to prepare for trial."[49]

Here, the trial court did not conduct a Burnet analysis. But accepting the limitations on Dr. Wollert's testimony implicate Burnet, Coley does not establish a basis for relief on appeal.

A lack of Burnet findings is harmless if excluded testimony is irrelevant, cumulative, or otherwise inadmissible.[50] The majority of cases applying Burnet involve the complete exclusion of witnesses rather than mere limitation of a permitted witness's testimony.[51] Our Supreme Court has acknowledged the policies underlying this distinction and reasoned an offer of proof is not necessary "when a key witness is struck as a sanction for a purported discovery violation," but an offer of proof is required "where a court refuses to admit a particular piece of testimony during trial."[52]

Here, the trial court did not completely exclude Dr. Wollert; the court limited particular pieces of his testimony. As discussed, Coley failed to make a sufficient offer of proof regarding the nature of the excluded testimony.

Additionally, most of the cases applying Burnet involve pretrial discovery rulings and not mid-testimony exclusion of particular testimony. Especially in the setting of a mid-testimony ruling on the scope of an expert's testimony, efficiency

---

[49] Foss Maritime Co. v. Brandewiede, 190 Wn. App. 186, 194, 359 P.3d 905 (2015) (citing Burnet, 131 Wn.2d at 494), review denied, 185 Wn.2d 1012 (2016).

[50] See Jones v City of Seattle, 179 Wn.2d 322, 356-67, 314 P.3d 380 (2013) (lack of findings regarding exclusion of evidence as a discovery sanction is harmless where the proffered evidence is irrelevant, or cumulative.).

[51] See In re Dependency of M.P., 185 Wn. App. 108, 340 P.3d 908 (2014); Blair v. Ta-Seattle East No. 176, 171 Wn.2d 342, 254 P.3d 797 (2011).

[52] Blair, 171 Wn.2d at 352 n.5.

requires a sufficient offer of proof to avoid ongoing disruptions and scheduling conflicts for rebuttal and other witnesses. These concerns are not as pronounced in the pretrial context.

In Jones v. City of Seattle, late-disclosed witnesses were excluded mid-testimony.[53] Our Supreme Court recognized that a lack of Burnet findings was harmless.[54] But in Jones, the trial court was provided with enough detail concerning the proffered testimony to conduct a meaningful analysis of harmless error.

Here, in addition to a request for a new trial, Coley asks this court to speculate whether the limitations had any meaningful impact on the outcome of the trial. But Coley's proposition would reward a party who loses a motion to exclude evidence, does not mention Burnet, and does not make an offer of proof. Whether intentional or inadvertent, the party proffering evidence without an adequate offer of proof frustrates the appellate court's ability to conduct a meaningful Burnet analysis.

Consistent with recognized policies compelling a sufficient offer of proof, we conclude that in the context of mid-testimony exclusion of particular pieces of testimony, the proponent of the excluded evidence has an obligation to advise the trial court of the specific proposed testimony. The offer must be sufficient to allow meaningful appellate review whether an exclusion implicating Burnet is harmful or prejudicial. Because Coley has not made such an offer of proof, we decline to grant any relief on appeal.

---

[53] 179 Wn.2d 322, 332-36, 314 P.3d 380 (2013).

[54] Id. at 356-57.

Coley also challenges the trial court ruling sustaining the State's objection that Dr. Wollert improperly bolstered his juvenile-only offender opinion by citing another expert's view that the prison system considered Coley a juvenile offender.

During direct examination, Coley asked Dr. Wollert, "In the records was there indication that the prison considered Greg a juvenile sex offender?"[55] Dr. Wollert referenced the opinion of Dr. Paul Daley, a Department of Corrections (DOC) psychologist who previously evaluated Coley's records. In his report, Dr. Wollert stated that Dr. Daley opined Coley did not meet the criteria for sexually violent predator status. Dr. Wollert also noted Dr. Daley's "observation that most of Mr. Coley's sexual-offense history occurred while he was a child."[56] The State objected to Dr. Wollert "testifying about what other experts have considered" because such testimony constituted bolstering.[57]

The briefing on this issue is not especially helpful. Although ER 702 and 703 allow an expert to identify facts and data that are the basis for his or her opinion, an expert should not act as a conduit to restate a nontestifying expert's opinions.[58]

On this record, we conclude it was within the discretion of the trial court to preclude Dr. Wollert from testifying that another expert had observed that the DOC treated Coley as a juvenile offender.

---

[55] RP (Jan. 15, 2016) at 880-81.

[56] Ex. 62 at 15.

[57] RP (Jan. 15, 2016) at 881.

[58] DAVID H. KAY, DAVID E. BERNSTEIN, & JENNIFER L. MNOOKIN, THE NEW WIGMORE: A TREATISE ON EVIDENCE: EXPERT EVIDENCE § 4.7.1 (2nd ed. 2017) ("Rule 703 does not permit the bolstering of one expert's testimony with a showing that other prestigious experts concur.").

### IV. Cumulative Error

Coley argues cumulative error resulted in an unfair trial, but he does not establish any cumulative error.[59]

We conclude Coley was not deprived of a fair trial. Therefore, we affirm.

WE CONCUR:

_____

_____          _____
Trickey, J                       Dwyer, J.

---

[59] In re Detention of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012) (citing State v. Grieff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000) ("The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.")).