Filed 11/19/20  P. v. Flores CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JOSE FLORES,

    Defendant and Appellant.

E071975

(Super.Ct.No. FWV18003113)

OPINION

APPEAL from the Superior Court of San Bernardino County.  David A. Williams, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Mary K. Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

BACKGROUND

Defendant and appellant, Jose Flores, thought his roommate was dating his ex-wife.  Defendant asked the victim to speak with him outside.  Once outside, defendant pulled out a knife and stabbed the victim in the stomach, inflicting an almost three-inch-deep wound.

A jury convicted defendant of one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[1] and one count of battery causing serious bodily injury (§ 243(d)).  The jury also found true that defendant personally used a deadly weapon (§ 12022, subd. (b)(1)), and inflicted great bodily injury on the victim (§ 12022.7, subd. (a)) in the commission of the offenses.  The trial court sentenced defendant to six years in prison.

On appeal, defendant argues the trial court prejudicially erred by (1) denying his *Batson*/*Wheeler*[2] motion and (2) not holding a second *Marsden*[3] hearing.  We disagree and affirm the judgment.

---

[1]  Unless otherwise noted, all further statutory references are to the Penal Code.

[2]  *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

[3]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

DISCUSSION

A. *The Trial Court Properly Denied Defendant's* Batson/Wheeler *Motion*

After the prosecutor used a peremptory strike during voir dire to exclude an African American prospective juror, defendant moved under the authority of *Batson*, *supra*, 476 U.S. 79 and *Wheeler*, *supra*, 22 Cal.3d 258, to challenge the strike. The trial court denied the motion. We conclude the trial court did not err in doing so.

1. *Additional Background*

During voir dire, the prosecutor asked prospective jurors if they or any close friends or relatives had been charged with a crime. Juror 12, an African American woman, responded that she had had two relevant experiences. She explained the first experience as follows: "I was at a party, and we were leaving. We were in Long Beach, and my friends and I were in the car. We were getting ready to leave. Next thing we know, Long Beach police pulls up. Guns were drawn. What was going on? We had no clue. Apparently there was gunshots right before we got there. [¶] So the police didn't specify anything, they just said, 'Throw your keys out your car.' We're following instructions as we were supposed to do. We're in our early 20s. We're sticking our hands out the window. They come out to the car. The red lights, everything. We're like, 'Oh my God. I'm going to die.' We didn't do anything. [¶] . . . [¶] They laid all the guys on the floor, on the ground, handcuffed them. We were just sitting there like, okay, do I call my mother or my brother, because my brother is in law enforcement. [¶] And

they let us go like, 'Okay. You guys need to go home.' But that was an interesting experience. They didn't single anybody out. They pretty much treated everybody the same. But for them not to know who we are to have their guns drawn, I had never experienced that in my life. [¶] . . . [¶] My heart almost stopped."

Juror 12 explained her second experience as follows: "I was irresponsible with my car registration. And I did not show up for a court date here in Rancho [Cucamonga]. . . . And I get in my car and drive off. [¶] Fontana PD pulls me over. They let me keep my car, but they arrest me because I had a warrant out. I started crying. I was like, oh, my God. So then they took me to West Valley [Detention Center], and I'm sitting in there like tearing up. The correctional officers are laughing at me. They're like, 'It's okay. You are going to go home. You are fine. They do this to teach you a warning to show up.' [¶] I was like, lesson learned. Can I please go home? After four hours, they sent me home and my friends are cracking jokes. . . . [¶] [¶] And I was like, it's a funny story for later. The only time I felt somebody kind of judge me was this one guy was patting me down, and he goes, 'Have you ever been arrested before?' [¶] I said, 'No.' [¶] He was like, 'Ever?' [¶] I said, 'No. Contrary to what you might think, not all minorities want to go to jail. Can I go home now?'"

The prosecutor then asked Juror 12 several follow-up questions about the first incident, but did not ask about the second incident. The prosecutor "moved on" due to time constraints and questioned other prosecutive jurors.

The prosecutor used her first peremptory challenge to excuse Juror 103, an African American woman, for cause because she said she had severe anxiety and would be unable to listen to testimony.

The prosecutor used her second peremptory challenge, which was without cause, to excuse Juror 12. Defense counsel immediately objected on *Batson/Wheeler* grounds. The trial court responded, "at the present time, I'm going to deny." The prosecutor replied that she did not hear what the trial court said. The trial court replied, "Present time I'm going to deny that. We'll reserve on that though."

The parties and the trial judge went into chambers to discuss defendant's *Batson/Wheeler* motion outside the presence of the jury. Defense counsel noted there were "eight African Americans on the . . . entire venire," one of which, Juror 103, was excused for cause. Counsel also noted that there were two African Americans on the panel.

Defense counsel argued there was no reason why Juror 12 should be excused. Defense counsel did not "see any difference between" her and any of the other jurors, thought her answers were "just as satisfactory" as those of other jurors, and considered her "more of a pro-prosecution juror."

The trial court asked if the prosecutor wished to be heard. The prosecutor explained she "had some concerns with some of the things" Juror 12 said. The prosecutor thought Juror 12 had "some strong opinions that police officers, at least in the two experiences where she was arrested, looked differently upon her based on" her race.

The prosecutor recalled that Juror 12 said something to the effect of, "'Believe it or not, not all minorities are criminals.'"[4] The prosecutor continued: "I don't know how that will translate. How she is going to be perceiving the defendant, whether she perceives him as a minority, and that's going to cause her to focus on that rather than the evidence, or if she is going to be fair to the victim and if she is going to perceive him as the minority and go all with him and not listen to the rest of the evidence. So I elected to use my preempt [*sic*] for that reason. Nothing to do with race."

Defense counsel disagreed with the prosecutor's characterization of Juror 12's experience when she was arrested for an outstanding warrant. Defense counsel recalled that Juror 12 made her "'not all minorities want to go to jail'" comment in response to an officer's "derogatory" questions about whether she had ever been arrested. Defense counsel also noted that the prosecutor did not "make any attempt to follow-up" or to ask Juror 12 any questions about her comments, such as "[a]re you going to essentially stand up for all minorities regardless of the evidence?"

The trial court found that Juror 12 made "statements that would lead a prosecutor to believe that she may be somebody that she may not want on the jury. Not based on her race, but based on some of her answers." The court reasoned that some of Juror 12's answers were "the type of answer that people get excluded on because they've had unfavorable instances with police who are going to be testifying in this case." The trial

---

[4] The prosecutor incorrectly recalled Juror 12's comment. As noted, she said, "Believe it or not, not all minorities want to go to jail."

6

court therefore "could see why the prosecutor would look at those matters and use a preempt [*sic*]. Not by her race, but by her answers." Accordingly, the trial court denied defendant's *Batson/Wheeler* motion. Defense counsel then asked whether the court was "finding that there was no intentional discrimination by the prosecution." The court replied, "Correct."

Shortly afterward, while in court but outside the presence of the jury, the prosecutor asked to be heard "to make sure" her reasons for using a peremptory challenge on Juror 12 were "clear." The prosecutor thought Juror 12's "not all minorities want to go to jail" comment "displayed a negative attitude towards the law enforcement officers." The prosecutor stated that she used the challenge because of the "entire context" of Juror 12's experience of being arrested for an outstanding warrant. The prosecutor explained: "[T]he reasoning for me kicking her [was] her negative attitude about law enforcement when she came in because she's picked up on a warrant for not taking care of her court business." The trial court asked if defense counsel wanted to be heard, defense counsel said "No," and the trial court stated that it had already made its ruling on the record.

### 2. *Analysis*

*Batson/Wheeler* motions require a three-step analysis. "'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." [Citation.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes.

7

[Citations.] Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." [Citation.]'" (*People v. Taylor* (2010) 48 Cal.4th 574, 611.)

The parties dispute whether the trial court denied defendant's *Batson/Wheeler* motion at the first or third step. After the prosecutor explained her reasons for striking Juror 12, the trial court expressly found that they were non-discriminatory. "Because the prosecutor explained her reason for the peremptory challenge of [Juror 12], and the trial court ruled on the ultimate question of intentional discrimination, the issue of whether defendant made a prima facie showing is moot." (*People v. Elliott* (2012) 53 Cal.4th 535, 560.) "We therefore proceed directly to the third step of the *Batson/Wheeler* analysis." (*Id.* at p. 561.)

"'We review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges "'with great restraint.'" [Citation.] We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.'" (*People v. Lenix* (2008) 51 Cal.4th 830, 849.) "This rule of deference is warranted because *Batson*'s third-step inquiry often involves evaluation of 'whether the prosecutor's demeanor belies a discriminatory intent.' [Citation.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1059 (conc. opn. of Liu, J.).)

"Appellate review of a step three finding of nondiscriminatory intent is also informed by the principle that 'the defendant's burden at the third stage of a

8

*Batson/Wheeler* hearing is to show the prosecutor excused prospective jurors for discriminatory reasons [citation], not merely that some of the nondiscriminatory reasons offered by the prosecutor are not supported by the record.'" (*People v. Mai*, *supra*, 57 Cal.4th at p. 1049.) The prosecutor's ""justification need not support a challenge for cause, and even a 'trivial' reason, if genuine and neutral, will suffice." [Citation.] A prospective juror may be excused based upon facial expressions, gestures, hunches, and even for arbitrary or idiosyncratic reasons.'" (*People v. Winbush* (2017) 2 Cal.5th 402, 434.)

"At the third step of the *Batson/Wheeler* analysis, the trial court evaluates the credibility of the prosecutor's neutral explanation. Credibility may be gauged by examining factors including but not limited to ""the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.'"" (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1168.) We thus focus our inquiry "'on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective *reasonableness* of those reasons.'" (*People v. Chism* (2014) 58 Cal.4th 1266, 1317.) "All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory. '[A] "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. [Citations.]' [Citation.]" (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.)

Because analysis at the third step "turns largely on an 'evaluation of credibility,'" the trial court's ruling "'must be sustained unless it is clearly erroneous.'" (*Felkner v. Jackson* (2011) 562 U.S. 594, 598.) As a result, we must affirm the trial court's decision if there is substantial evidence that the prosecutor genuinely "articulated a permissible, race-neutral reason for the excusal." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1010.)

We conclude that there was such substantial evidence. The prosecutor argued she exercised a peremptory strike on Juror 12 because of her arrest experience and her "negative attitude" toward one of the officers at the detention facility. As explained above, an officer at the facility asked her if she had been arrested, she said "no," and the officer followed up with, "Ever?" This offended Juror 12 and prompted her to say, "'[c]ontrary to what you might think, not all minorities want to go to jail.'"

Juror 12's statements thus showed that this experience with law enforcement was negative, which constituted substantial evidence of "a permissible, race-neutral reason" for her excusal. (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1010.) As the trial court correctly observed, a negative experience with law enforcement is a common, legitimate reason to excuse a prospective juror. (See *People v. Cowan* (2010) 50 Cal.4th 401, 450 ["A prospective juror's negative experience with the criminal justice system, including arrest, is a legitimate, race-neutral reason for excusing the juror."].) Juror 12's "not all minorities" comment suggested she thought the officer was biased against minorities, which in turn reflected a potential bias against law enforcement. The

10

prosecutor therefore could excuse Juror 12 due to her negative experiences with and perceived bias against law enforcement. (See *ibid.*; see also *Green v. Travis* (2d Cir. 2005) 414 F.3d 288, 300 ["[A] juror's perceived bias against law enforcement can constitute a race-neutral explanation for a peremptory challenge."]; cf. *People v. Bryant* (2019) 40 Cal.App.5th 525, 547 ["Under controlling precedent, the peremptory challenges against O.H. and T.M. were permissible given these jurors' negative experiences with the criminal justice system." (conc. opn. of Humes, P.J.)].]

Although not conclusive, the fact that two African Americans remained on the jury suggests the prosecutor did not excuse Juror 12 for discriminatory reasons. "Indeed, ultimate inclusion on the jury of members of the group allegedly targeted by discrimination indicates '"good faith"' in the use of peremptory challenges, and may show under all the circumstances that no *Wheeler/Batson* violation occurred." (*People v. Garcia* (2011) 52 Cal.4th 706, 747-748.)

Finally, the trial court's discussion of defendant's *Batson/Wheeler* motion with counsel reflects the court's "sincere and reasoned effort to evaluate the nondiscriminatory justifications offered" by the prosecutor. (*People v. Burgener* (2003) 29 Cal.4th 833, 864.) The trial court listened to both sides, discussed Juror 12's comments, evaluated counsel's arguments, and articulated its reasoning. The trial court correctly noted that an unfavorable instance with the police like the one Juror 12 experienced was a common reason jurors are excluded. (See *People v. Lenix*, *supra*, 44 Cal.4th at p. 628 ["'We have

repeatedly upheld peremptory challenges made on the basis of a prospective juror's negative experience with law enforcement.'"].)

"[B]ecause the trial court is 'well positioned' to ascertain the credibility of the prosecutor's explanations and a reviewing court only has transcripts at its disposal, on appeal '"the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal" and will not be overturned unless clearly erroneous.' [Citations.]" (*People v. Riccardi* (2012) 54 Cal.4th 758, 787, abrogated on other grounds by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) We therefore must defer to the trial court's finding that the prosecutor did not strike Juror 12 for discriminatory reasons unless "the prosecutor's stated reasons are either unsupported by the record, inherently implausible, or both." (*People v. Hardy* (2018) 5 Cal.5th 56, 76; accord, *People v. Bryant*, *supra*, 40 Cal.App.5th at p. 543.)

Applying this deferential standard of review, we conclude that the prosecutor's race-neutral reasons to excuse Juror 12 were plausible, there is substantial evidence supporting those reasons, and there is insufficient evidence in the record to support a determination that the prosecutor removed Juror 12 because she is African American. The record also shows that the trial court made a sincere and reasoned evaluation of the prosecutor's reasons for striking Juror 12, and found that those reasons were not discriminatory. Because that finding is not "clearly erroneous," we must uphold it. (*People v. Riccardi*, *supra*, 54 Cal.4th at p. 787.)

Defendant argues the trial court erroneously denied his *Batson/Wheeler* motion because the prosecutor sought to dismiss Juror 12 "on the assumption [Juror 12] would be 'partial to the defendant' because of their shared status as minorities." In support, defendant cites several distinguishable cases.

In *People v. Johnson* (1978) 22 Cal.3d 296, 299, the prosecutor struck *all* African American jurors because the case involved witnesses who had made racist statements, so the prosecutor thought it would be "very difficult for any black person to be totally objective" about the case. Similarly, in *United States v. Brown* (10th Cir. 1987) 817 F.2d 674, a prosecutor improperly "challenged two black jurors because the prosecutor simply presumed from his previous experience all black people would be influenced to acquit the defendant because of the mere presence of" defense counsel who was African American. Likewise, in *United States v. Bishop* (9th Cir. 1992), 959 F.2d 820, overruled on other grounds by *United States v. Nevils* (9th Cir. 2010) 598 F.3d 1158 (en banc), the prosecutor improperly struck a juror because the prosecutor assumed the juror believed the police "'pick on black people'" because the juror was African American and "lived in a predominately low-income, black neighborhood."

In short, in *Johnson*, *Brown*, and *Bishop*, the prosecutors improperly used peremptory challenges to jurors based on assumptions stemming from their race, not because of their answers in voir dire. Here, contrary to defendant's assertion, the prosecutor did not assume Juror 12 would be biased in defendant's or the victim's favor simply because of "their shared status as minorities" or solely because of Juror 12's race.

13

Rather, the prosecutor believed Juror 12's answers in voir dire, particularly her "not all minorities" comment, suggested a potential bias against law enforcement that could affect Juror 12's interpretation of the evidence.

Defendant also relies on *Turnbull v. Florida* (Fla. Ct. App. 2006) 959 So.2d 275, which is inapplicable here. In that case, the prosecutor asked potential jurors irrelevant questions about whether they thought the police racially profiled people. (*Id.* at p. 276.) Five prospective jurors—all African American—"answered affirmatively," and the prosecutor struck them on that basis. (*Ibid.*) The *Turnbull* court held that it could not "condone this trial strategy" of attorneys asking "irrelevant inflammatory questions to incite jurors to respond" and then using the jurors' "responses as neutral reasons to justify" striking them. (*Id.* at p. 278.)

Here, by contrast, the prosecutor asked the prospective jurors whether "you or somebody who you're close to or a friend or relative [had] ever been charged with a crime or convicted." Defendant does not—and cannot—argue this question was improper. (See *People v. Cowan*, *supra*, 50 Cal.4th at p. 450 ["A prospective juror's negative experience with the criminal justice system, including arrest, is a legitimate, race-neutral reason for excusing the juror."].)

Finally, defendant relies on *United States v. Brown* (9th Cir. 2019) 925 F.3d 1150 for the proposition that we "cannot discount the issue of race in determining whether the prosecutor's challenge . . . was race-neutral." *Brown* is not a *Batson* case; it concerned whether the police had reasonable suspicion to arrest the defendant, an African American

14

male, who fled from the police. (*Id*. at p. 1151.) As relevant here, the *Brown* court considered whether the defendant's flight provided the officers with reasonable suspicious to arrest him. (*Id*. at p. 1155-1156.) The Ninth Circuit explained that "[i]n evaluating flight as a basis for reasonable suspicion," the court could not "totally discount the issue of race" given that "uneven policing may reasonably affect the reaction of certain individuals—including those who are innocent—to law enforcement." (*Id*. at p. 1156.) Defendant fails to explain how *Brown* applies here.

Defendant also offers five reasons "why the prosecutor's reliance on whatever feelings [Juror 12] may have had was insufficient in this case." We find none of them persuasive.

First, defendant contends Juror 12's thoughts about law enforcement were irrelevant because defendant "did not ascribe any improper motive to law enforcement, nor did officers play any significant role in this case." But, as the People note, a detective who investigated defendant's offenses was one of only three prosecution witnesses. The detective testified that he spoke to the victim after the victim came out of surgery for the stab wound defendant inflicted on him. The detective explained that the victim told him that defendant had stabbed him because they had an argument and that the victim "appeared to be still pretty scared." The detective's testimony was therefore highly relevant to establishing defendant's guilt and the victim's credibility, so the detective's credibility and testimony was "related to the particular case to be tried." (*Batson*, *supra*, 476 U.S. at p. 98.) The prosecutor therefore could permissibly conclude that Juror 12's

15

negative experiences with and perceived bias against law enforcement could have affected her decision-making.

Second, defendant asserts the prosecutor's failure to ask Juror 12 follow-up questions about her arrest shows that the prosecutor's stated reasons for striking Juror 12 were "a pretext for discrimination." Although whether a prosecutor engaged in a "perfunctory" or "desultory" voir dire or asked the challenged juror no questions is a relevant consideration (*People v. Taylor*, *supra*, 48 Cal.4th at p. 615), the prosecutor here extensively questioned the prospective jurors. The prosecutor also asked Juror 12 multiple questions about her experience with the officers who stopped her and her friends at a party. The fact that the prosecutor did not ask Juror 12 about her arrest does not necessarily suggest that the prosecutor dismissed her for discriminatory reasons. (See *People v. Huggins* (2006) 38 Cal.4th 175, 234-26 [finding no discrimination even though prosecutor did not ask juror questions about the ground on which prosecutor struck juror].) Moreover, Juror 12 completed a 16-question questionnaire,[5] which further shows the prosecutor's voir dire was not perfunctory or desultory. (See *People v. Bell* (2007) 40 Cal.4th 582, 589-599 fn. 5; *People v. Reed* (2018) 4 Cal.5th 989, 1001 ["[A]n attorney's failure to engage jurors in voir dire is less significant than when the attorneys know nothing about the jurors prior to striking them."].)

_____

[5] The first "question" of the 17 questions on the questionnaire asks the juror to state his or her juror number.

16

Third, defendant claims the prosecutor should not have struck Juror 12 because "there was no racial aspect to the case" and no allegations of racial profiling. That may be true, but a prospective juror's negative experiences with and potential bias against law enforcement is a permissible race-neutral ground to excuse the juror. (See *People v. Panah* (2005) 35 Cal.4th 395, 442 ["A negative experience with police or the arrest of a prospective juror or a close relative is a gender-neutral reason for exclusion."]; *People v. Lenix*, *supra*, 44 Cal.4th at p. 628 ["'We have repeatedly upheld peremptory challenges made on the basis of a prospective juror's negative experience with law enforcement.'"].) Defendant cites no authority that suggests this principle applies only if the case involves a "racial aspect" or allegations of stereotyping or racial profiling.

Fourth, defendant argues the prosecutor's concern that Juror 12 would "lose focus on the evidence" was unfounded because Juror 12 assured defense counsel that she could competently serve as a juror. But "[a] party's justification for exercising a peremptory challenge '"need not support a challenge for *cause*, and even a 'trivial' reason, if genuine and neutral, will suffice."'" (*People v. Mills* (2010) 48 Cal.4th158, 176.) So even if the prosecutor mistakenly thought Juror 12 would not fairly evaluate evidence, the prosecutor still could permissibly excuse her. (*People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1015 [prosecutor permissibly excused juror who said "he could be fair to both sides in the trial"].)

Fifth and relatedly, defendant contends the prosecutor erroneously concluded Juror 12 "formed a negative opinion" about law enforcement because of her arrest because

17

Juror 12 eventually considered the experience to be "simply fodder for later jokes, with the only negative aspect being her encounter with the skeptical officer." We question defendant's suggestion that Juror 12's arrest and hours-long detention was not a negative experience. But even if the prosecutor was mistaken about how Juror 12 looks back on the incident, the prosecutor was still entitled to strike her based on her arrest, irrespective of her feelings about it. (See *People v. Cowan*, *supra*, 50 Cal.4th at p. 450; *People v. Mills*, *supra*, 48 Cal.4th at p. 176.)

*Batson* "does not require that the [prosecutor's] justification be unrelated to race. *Batson* requires only that the prosecutor's reason for striking a juror not *be* the juror's race." (*Hernandez v. New York* (1991) 500 U.S. 352, 375 (conc. opn. of O'Connor, J.).) Here, the trial court reasonably concluded that the prosecutor did not strike Juror 12 because of her race, but for nondiscriminatory reasons rooted in Juror 12's answers during voir dire. The trial court reasonably found that those answers suggested Juror 12 held biases against law enforcement, which in turn provided the prosecutor with permissibly race-neutral reasons to excuse Juror 12. Because that conclusion was supported by substantial evidence and not clearly erroneous, the trial court's ruling denying defendant's *Batson/Wheeler* motion "must be sustained." (*Snyder v. Louisiana* (2008) 552 U.S. 472, 477.)

B. *The Trial Court Did Not Err by Not Holding a Second* Marsden *Hearing*

A trial court must hold a *Marsden* hearing "'""[w]hen a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate

18

representation'"'" to allow the defendant "''"'to explain the basis of his contention and relate specific instances of the attorney's inadequate performance.'"'" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1085.)  Defendant contends the trial court violated this obligation by not holding a second *Marsden* hearing.  We disagree.

Before trial, the court held a *Marsden* hearing at defendant's request.  The trial court rejected defendant's request for a new attorney, finding that defense counsel could adequately represent defendant at trial.

At the beginning of the sentencing hearing, defense counsel told the trial court that "based on what [defendant] said in the probation report," defense counsel was "almost certain" that defendant would request a second *Marsden* hearing.  The trial court explained that defendant was "not getting one."  Defendant responded that he would "like to appeal."  The trial court then told defendant, "It's totally useless to do a *Marsden* hearing.  If I grant it, then [defense counsel] is not your lawyer, I'll read the sentencing and the sentencing will go forward.  So it really doesn't make any difference."  The trial court then recessed.

After the recess, the trial court cleared the courtroom to hold a second *Marsden* hearing.  The trial court asked defendant if he wanted to be heard.  Defendant replied, "I would like [defense counsel] to keep to continue representing me."  Defense counsel said he was "frankly surprised," explained that defendant "doesn't want an attorney," concluded that "we don't need to proceed on a *Marsden*," and apologized for the

misunderstanding. The trial court therefore did not hold a *Marsden* hearing and proceeded with sentencing defendant.

As the People note, it is unclear whether defendant even wanted a second *Marsden* hearing. It appears defense counsel assumed defendant wanted one because of defendant's comments in his probation report. But the only relevant statement in the probation report was defendant's pretrial statement that "[h]e wanted to change his Public Defender." When the trial court began what was intended to be a second *Marsden* hearing, defense counsel explained that a *Marsden* hearing was unnecessary. The record therefore does not support defendant's argument that he requested a second *Marsden* hearing.

In any event, even if defendant did request a second *Marsden* hearing, he unambiguously abandoned the request when he said, "I would like [defense counsel] to keep to continue representing me." We conclude that defendant "affirmatively withdrew" his *Marsden* request by making this statement. (*People v. Padilla* (1995) 11 Cal.4th 891, 927, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.) Defendant then denied the trial court's offer of a second *Marsden* hearing. "Defendant's failure to take advantage of this offer can only be interpreted as an abandonment of his" purported complaints about defense counsel. (*People v. Vera* (2004) 122 Cal.App.4th 970, 981-982.) The trial court therefore did not err in failing to hold a second *Marsden* hearing.

20

## III.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

I concur:

MILLER
Acting P. J.

[*P. v. Flores*, E071975]

MENETREZ, J., Concurring.

    I concur in the majority opinion. I write separately only to acknowledge that the analysis under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 arguably implicates some of the concerns described in Justice Liu's dissent from denial of review in *People v. Triplett* (2020) 48 Cal.App.5th 655, 665a (stmt. of Liu, J.). But I believe the majority opinion's analysis is sound under current law.

                                         MENETREZ           

                                                    J.